Theodora Hope MARTIN, an individual William Martin, an individual, and Louise Martin, an individual, Appellants

v.

MERRELL DOW PHARMACEUTICALS, INC. formerly known as Merrell–National Laboratories, a Division of Richardson Merrell, Inc.

No. 87–3753.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6)
June 6, 1988.
Decided July 20, 1988.

Louis M. Tarasi, Jr., Joseph J. Hinchliffe, Tarasi & Johnson, P.C., Pittsburgh, Pa., for appellants.

Frank C. Woodside, III, John E. Schlosser, Thomas C. Donnelly, Frederick M. Erny, Dinsmore & Shohl, Cincinnati, Ohio, Raymond G. Hasley, C. Andrew McGhee, Rose, Schmimdt, Hasley & Disalle, Pittsburgh, Pa., for appellee.

Before STAPLETON, GREENBERG, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Theodora Martin was born with serious birth defects. In this suit, she and her parents, Louise and William Martin, seek damages from Merrell Dow Pharmaceutical Inc. (Merrell Dow), the manufacturer of Bendectin, a drug prescribed for treatment of nausea associated with pregnancy. The Martins allege that Theodora's birth defects resulted from Louise's ingestion of Bendectin during her pregnancy. The district court granted summary judgment to Merrell Dow. We will affirm.

Merrell Dow sought summary judgment on the basis of a "timing of ingestion" defense. In support of the motion, Merrell Dow submitted competent evidence showing that the human embryo and each of its component parts develop in distinct and identifiable stages, and that only during the critical period of the development of a particular organ or anatomical system can its development be deranged. As a result, a pharmaceutical product, assuming it is capable of causing birth defects, must be ingested during the critical period in order to cause such defects; any drug ingested after the critical period cannot cause such

defects. Thus, a defendant in a particular case may be able to demonstrate the absence of proximate cause by establishing the date of conception, the date of first ingestion, the type or types of birth defects, and the critical period of development for the affected organ or organs. The Martins do not dispute any of this scientific evidence.

On June 11, 1986, Louise Martin testified as follows during her deposition:

QUESTION: Did you suffer from morning sickness?

ANSWER: Yes.

QUESTION: When did that begin?

ANSWER: Probably at the beginning of my second month, maybe earlier, I don't know, I can't remember.

\* \* \* \* \* \*

QUESTION: Did you try anything yourself at home to try and alleviate the nausea?

ANSWER: No.

QUESTION: Did you go to Dr. Staurus [sic] to get something to alleviate that nausea?

ANSWER: Yes. I went to him to see [sic] find out if I was pregnant and to ask him for something, yes.

QUESTION: What did he give you?

ANSWER: Bendectin.

QUESTION: Okay. Do you remember when he prescribed it?

ANSWER: Well, the visit that I had was May 19, so—that's on the record sheet, so I don't remember but that's—I don't know what to say, probably the date, because it's on there.

\* \* \* \* \* \*

QUESTION: Did you begin taking Bendectin right away after he prescribed it?

ANSWER: Yes.

\* \* \* \* \* \*

QUESTION: Did you have any of the Bendectin left over from your pregnancy with Kimerblee.

ANSWER: I don't think so.

In their answers to interrogatories, dated August 13, 1985, the Martins stated the following under oath:

11. Identify each physician who prescribed Bendectin and state the date the prescription was issued.

ANSWER: Walter E. Starz, M.D., OGMA, Limited, Suite 227, Central Medical Hospital, Center Avenue, Pittsburgh, PA 15219. This prescription was issued on or about May 19, 1966.

12. As to each Bendectin prescription, state the date it was first filled, the date(s) of each subsequent refill, and the number of pills received each time.

ANSWER: Precription first filled 5/19/66. Dates of subsequent refills and number of tablets received are unknown to Plaintiff.

14. State whether the mother at any time obtained Bendectin in any way other than by her own, current prescription(s) (*e.g.*, from friend, relative, left over from prior pregnancy).

ANSWER: To the best of her knowledge, information and belief, mother plaintiff didn't obtain Bendectin other than by prescription.

17. State the number of Bendectin pills ingested by the mother each day, the time of day the Bendectin pills were taken and the number of days the Bendectin pills were taken by the mother. If the mother's routine varied, indicate at which times and in what way the ingestion varied.

ANSWER: Mother plaintiff took Bendectin several times per day, but the exact number is unknown. She took Bendectin in the morning and as needed throughout the day from approximately the second month of her pregnancy until the birth of Theodora.

18. State the dates the mother first began taking Bendectin and when she stopped.

ANSWER: Mother plaintiff began taking Bendectin in approximately the second month of her pregnancy and took it until pregnancy terminated.

On July 10, 1987, Merrell Dow moved for summary judgment based on the foregoing discovery and an affidavit of Dr. Keith L. Moore, a leading expert in the fields of prenatal developmental anatomy, embryology, and teratology. Dr. Moore's affidavit established that the critical periods of development for the relevant organs ended on Day 31, Day 42, and Day 43. Dr. Moore further opined that, based on the pleadings, medical records and discovery materials indicating that Bendectin was not ingested until the 53rd day following conception, Theodora's birth defects were already in existence when Bendictin was ingested.

In response to Merrell Dow's papers, the plaintiffs filed an affidavit of Louise Martin on August 19, 1987, one year after her sworn answers to interrogatories and 14 months after her deposition. In this affidavit she stated for the first time that she had taken Bendectin much earlier than May 19, 1966:

> Subsequent to March 15, 1966 but prior to my first visit with Dr. Starz on May 19, 1966, I felt myself pregnant with a child later named Theodora. I had morning sickness and I remember taking Bendectin that I had left over from an earlier pregnancy.
>
> I do not remember the date that I began taking Bendectin but I remember that I stopped taking it for a few days before I saw Dr. Starz for a new Bendectin prescription. I also remember that I began taking Bendectin at approximately the time I should have had my first period, but for my pregnancy, or very shortly thereafter.

The Martins also filed an expert affidavit expressing the view that *if* Louise Martin first ingested Bendectin on or about Day 11 as represented in her affidavit, Bendectin increased the risk of Theodora's having birth defects.

Merrell Dow, on September 4, 1987, asked that the district court strike or refuse to consider Louise Martin's affidavit

because it squarely contradicted her earlier sworn statements. On October 14, 1987, the district court granted summary judgment to Merrell Dow, holding that Louise Martin's affidavit did not create a material dispute of fact as to the date of first ingestion.

■ We are asked to decide whether the district court erred in disregarding Louise Martin's affidavit.[1] We recognize that there are situations in which sworn testimony can quite properly be corrected by a subsequent affidavit. Where the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact. *See e.g., Lane v. Celotex Corp.,* 782 F.2d 1526 (11th Cir.1986). The case before us, however, does not present such a situation. The date of Louise Martin's first ingestion of Bendectin, a fact of considerable importance, was the subject of repeated questioning. Plaintiff's affidavit, submitted only after she faced almost certain defeat in summary judgment, flatly contradicted no less than eight of her prior sworn statements:

> She started experiencing morning sickness for the first time in the second month of her pregnancy.
>
> She did not try anything herself at home to try and alleviate the nausea.
>
> She first sought relief for her morning sickness when she went to Dr. Starz on May 19, 1966.
>
> Her prescription for Bendectin, the source for all of the product she took, was issued by Dr. Starz on May 19, 1966.
>
> She first began taking Bendectin right after Dr. Starz had prescribed it on May 19, 1966.
>
> She first ingested Bendectin in the second month of her pregnancy.
>
> Her only source of Bendectin during her pregnancy with Theodora was through a prescription.

---

1. Plaintiffs simultaneously filed a notice of appeal and a motion for reconsideration twenty-nine days after the district court's decision. The court properly declined to rule upon the motion, holding that it was untimely and that, by virtue of the appeal, the court lacked jurisdiction to consider it.

She did not have any Bendectin left over from a prior pregnancy.

Moreover, no explanation was offered in the affidavit for the contradictions.[2] As a result, we conclude that it was permissible for the district court to disregard the affidavit for purposes of determining whether there was a material dispute of fact.

The numerous other courts of appeals that have considered the situation in which a party contradicts, without satisfactory explanation, his or her prior testimony, have reached the same decision. Each court has concluded that the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit. *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986); *Miller v. A.H. Robins Co.*, 766 F.2d 1102 (7th Cir.1985); *Van T. Junkins and Associates v. United States Industries*, 736 F.2d 656 (11th Cir.1984); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540 (9th Cir.1975); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969). Indeed, the reasoning advanced by the Second Circuit in *Perma Research* applies with equal force to the present case:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

410 F.2d at 578. When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction, the courts of appeals are in agreement that the subsequent affidavit does not create a *genuine* issue of material fact.

The judgment of the district court will be affirmed.[3]

---

2. Attached to Plaintiff's motion to reconsider was a second affidavit of Louise Martin in which she averred:

> During January 1987, as I was unpacking old medicines which my family had accumulated, I recalled that I had taken Bendectin from an old prescription. I was sorting through these medicines throwing some of them away and retaining others.
>
> Handling the old medicines stirred my memory as I thought about my case. When my attorney contacted me about Defendant's Motion for Summary Judgment, I advised him of this recollection which I had had in January, 1987.

We, of course, review the district court's grant of summary judgment on the basis of the record before it when the motion was submitted and decided. *United States v. Alldredge*, 432 F.2d 1248 (3rd Cir.1970); *Jaconski v. Avisun Corp.*, 359 F.2d 931 (3rd Cir.1966). Because the second affidavit was never properly before the district court, we do not consider the relevance, if any, of the proffered explanation therein.

3. We have considered and find to be without merit the Martins' alternative contention that Merrell Dow is liable for intentional infliction of emotional distress whether or not its conduct caused Theodora's birth defects.