**Mary McCLAMB, Plaintiff,**

v.

**Robert RUBIN, Secretary of the Treasury, Acting for the United States Department of the Treasury, Defendant.**

**Civil No. 2:95CV24.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

April 24, 1996.

Robert Cameron Cooke, Johnson, Tanner, Cooke, Younce & Moseley, Greensboro, NC, for plaintiff Mary McClamb.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for defendant Secretary of Treasury Robert Rubin.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff Mary McClamb, a black woman, has sued her employer, Defendant Robert Rubin, Secretary of the Treasury,[1] for racial and sexual discrimination under Title VII, 42 U.S.C. § 2000e–16, and the Equal Pay Act, 29 U.S.C. § 206(d). Defendant has moved for summary judgment, and the court will grant that motion.[2]

---

1. This case has proceeded with former Secretary of the Treasury Lloyd Bentsen named as Defendant. Because Rubin replaced Bentsen on January 10, 1995, the court will substitute Rubin as the proper defendant. Fed.R.Civ.P. 25(d)(1).

2. Plaintiff has moved to dismiss two other claims. One further possible claim can be quickly dismissed. Plaintiff's Complaint says she suffered intentional infliction of emotional distress; however, she does not include a claim for that tort. Defendant has moved to dismiss any tort claims, and that motion will be granted. Plaintiff would have to use the Federal Tort Claims Act's procedures, *see Eveland v. Director of C.I.A.,* 843 F.2d 46, 49–50 (1st Cir.1988), and she did not file an administrative claim demanding a sum certain, as the act requires, *see Ahmed v. United States,* 30 F.3d 514, 516–17 (4th Cir. 1994).

Defendant makes two additional motions. First, Defendant moves to strike Plaintiff's brief entitled "Plaintiff's Response to Defendant's Reply Brief." The local rules provide for only three briefs: a brief in support of summary judgment, a response, and a reply. Local Rule 206(e). Not only did Plaintiff file an additional brief, but also she exceeded her page limit for briefs. Local Rule 206(c). The motion will be granted, and the brief will be stricken. Second, Defendant moves to strike Plaintiff's jury demand. Because of the ruling on summary judgment, the court does not reach this motion.

## BACKGROUND

Plaintiff began working for the Internal Revenue Service ("IRS") in 1982 at the GS–7 job classification level. By 1989, she had been promoted and was serving as a Revenue Agent GS–11 in the General Programs Branch of the IRS's Greensboro, North Carolina, office. Plaintiff asserts that, around this time, the IRS began to discriminate against her by marking down her evaluations and failing to promote her.

In November 1989, Plaintiff was assigned to the Excise and Employment Tax Group ("Employment Group"). She began working primarily as coordinator for the SS–8 program. The SS–8 program is responsible for deciding whether the IRS considers workers to be employees or independent contractors. Plaintiff also worked on other tax cases, including some that were complex enough that the IRS ranked them as suitable for employees GS–12 or higher.

Plaintiff claims she was paid less than males performing equal work while in this assignment. Because she handled some matters rated for employees GS–12 or higher, she worked some cases similar to those managed by Bill Sizer and Joe Fish, both of whom were GS–12s and paid more than she was. Also, her predecessor in performing the SS–8 duties was Sizer, who was a GS–12 when he coordinated the SS–8 program.

Plaintiff also believes the IRS should have promoted her to GS–12 but did not because of her race and gender. In April 1991, Plaintiff filed a union grievance charging the IRS with discrimination. Plaintiff's branch manager, George Curran, offered to perform a desk audit, and Plaintiff agreed. A desk audit is a review to determine whether an employee's position classification accurately reflects her work. The IRS says it concluded that, because other offices had GS–8s and GS–9s coordinating the SS–8 programs, most of Plaintiff's work was at or below GS–11 level; thus, Plaintiff did not merit a promotion.

Plaintiff learned the results of the desk audit in September 1991. In early 1992, she told her supervisor Lori Nichols that she was considering further appeals. According to Plaintiff, Nichols said that she would examine the possibility of getting Plaintiff a temporary promotion that might become permanent. Plaintiff never formally appealed the desk audit.

In August 1992, Nichols restructured the SS–8 program. She decided to eliminate the single SS–8 coordinator and spread that work among the GS–12s. The office's managers wanted to announce a new GS–12 position to replace the SS–8 coordinator job. The regional IRS office refused to announce a new permanent GS–12 position, citing budgetary problems, and instead authorized a temporary GS–12 slot.

Plaintiff says that Nichols assured her in August 1992 that the temporary GS–12 position would become permanent. However, the announcement set out specifically that the position was temporary and, as such, could not exceed one year. Plaintiff competed with other applicants for the position and was selected in September 1992. Plaintiff signed a form on which she agreed that her GS–12 status would last only as long the IRS desired and definitely no later than September 19, 1993.

When the temporary position was set to expire in September 1993, Plaintiff's managers say they tried to have two permanent GS–12 positions announced. Presumably, Plaintiff would have applied for a position, as would have Avery Henline, a white male who had also been temporarily promoted. The regional office refused to create either new position. It said that it could not create any permanent GS–12 positions because of bud-

getary constraints and the fact that the division was relatively overstaffed with GS–12s.

Undaunted by the regional office's decrees, Plaintiff's supervisors still tried to find a way to keep Plaintiff at a GS–12 level. Curran asked to announce Plaintiff's position as a series of temporary GS–12 jobs. However, the division chief felt that such a maneuver would improperly circumvent the grade structure. Also, if Plaintiff's temporary status were extended beyond one year, she would become entitled to remain permanently at GS–12, and this would run afoul of the region's edict not to create new permanent GS–12 positions.

Therefore, the IRS says, Plaintiff had to return to a GS–11 position by September 19, 1993. In order to remain in the Employment Group and do GS–11 level work, Plaintiff would again have to coordinate the SS–8 program. Her alternative was to transfer to the General Program Group as a GS–11.

Days before the temporary promotion was to end, Plaintiff told Nichols that she wanted to continue working GS–12 cases just as she had done during the temporary position. Nichols replied that Plaintiff could not work primarily on GS–12 cases while at a GS–11 grade. This would have required the IRS to compensate Plaintiff for performing above grade work. Plaintiff then went out on leave for the rest of the temporary promotion.

As September 19 approached, Curran says he was forced to choose an assignment for Plaintiff. He could not wait for Plaintiff to return or she would have been in the position for longer than one year and would have been entitled to a permanent GS–12 position. Therefore, Curran decided to reassign Plaintiff to the General Program Group. He testifies that he decided to do so because that group needed additional employees and Plaintiff had additional chances to advance there. When Plaintiff returned, Curran told Plaintiff that she could return to the Employment Group and perform GS–11 level work. She declined.

On November 1, 1993, Plaintiff contacted an EEO counselor, but the counseling did not resolve her charges. On December 28, 1993, Plaintiff filed an EEO discrimination complaint. On December 1, 1994, Defendant's EEO Director issued a right-to-sue letter. On January 6, 1995, Plaintiff filed suit in this court.

## DISCUSSION

In examining the motion for summary judgment, the court must decide whether Defendant has demonstrated "that there is no genuine issue as to any material fact and that [Defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering the evidence, all reasonable inferences are to be drawn in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Plaintiff cannot survive summary judgment " 'through mere speculation or the building of one inference upon another.' " *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)), *rev'd on other grounds*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

### I. *Title VII*

#### A. Exhaustion of Administrative Remedies

■ Title VII provides a remedy for employment discrimination but limits relief to those who play by its rules. If an employee does not pursue the prescribed administrative remedies, her claim is time barred. *See Zografov v. V.A. Medical Ctr.*, 779 F.2d 967, 969 (4th Cir.1985). An aggrieved federal employee must consult an EEO counselor within forty-five days of the effective date of any discriminatory personnel action. 29 C.F.R. § 1614.105(a)(1) (1995). Plaintiff first contacted an EEO counselor on November 1, 1993. Therefore, under the forty-five day rule, only acts occurring after September 16, 1993, are actionable.

■ Plaintiff tries to avoid this limitation through the doctrine of equitable estoppel. An employee can invoke the principle of

equitable estoppel to stop a miscreant employer from benefitting from the statute of limitations. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996); 29 C.F.R. § 1614.105(a)(2). The burden is on the employee to show facts justifying equitable estoppel. *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 606 (7th Cir.), *cert. denied*, 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992). Plaintiff has not shown such facts to survive summary judgment on the time-barred claims.

■ Equitable estoppel is an extraordinary remedy and is available when the employer has engaged in active misconduct that causes the employee to fail to comply with the time limits. "Federal courts have typically extended equitable relief only sparingly," when "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but not "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). The Fourth Circuit has declared that Plaintiff must show either that this was "a deliberate design by the employer" or "that the employer should unmistakably have understood that [it] would cause [Plaintiff] to delay filing [her] charge" to justify equitable estoppel. *Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965–66 (4th Cir.1982); *see Zografov*, 779 F.2d at 969 (holding that, at the least, a showing of affirmative misconduct is required).

First, it is important to note that Plaintiff had been convinced of the IRS's discriminatory animus for years before her 1993 EEO complaint. In 1988 or 1989, she became aware that the IRS possibly discriminated in performing her job evaluations. In 1991, she filed a union grievance claiming that she had been discriminatorily denied promotions, and that led to her desk audit. Soon after her desk audit, she suspected that it was performed improperly. Equity does not generally protect parties who have long known of their claims.

Also, Plaintiff does not say she was unaware of the time limits for filing those claims, much less that any IRS employee misled her about the time limits. Plaintiff instead claims her supervisor, Lori Nichols, duped her into letting the time limits pass. First, in early 1992, Nichols told her she would look into a possible temporary promotion. Second, in August 1992, Nichols allegedly told her she thought the promotion would become permanent. Plaintiff, however, has no evidence that Nichols tried to mislead or delay her; Nichols secured a temporary promotion for Plaintiff, just as she had said she would. Further, there is no evidence that Nichols exacted a *quid pro quo* by making Plaintiff forego her Title VII claims in exchange for a promotion.[3] *See English v. Whitfield*, 858 F.2d 957, 963 (4th Cir.1988). Finally, both alleged conversations occurred months after Plaintiff learned the results of the desk audit and suspected that it was wrongly performed; therefore, Plaintiff had already long slept on her rights. Thus, none of Nichols' representations justify equitable estoppel.

Plaintiff also suggests she is entitled to have Defendant estopped because of the IRS's misconduct in performing her desk audit. Plaintiff says the IRS audited solely Plaintiff's SS–8 work even though she also handled more complex cases; thereby, they underrated her actual work. If true, these

3. On February 21, 1996, Plaintiff filed an affidavit after Defendant had moved for summary judgment. In it, Plaintiff claims, "I understood with Lori Nichols that if [I was promoted] I would not appeal the results of the desk audit." (Pl.'s Aff. ¶ 20.) However, during Plaintiff's extensive three-day deposition, she was asked at length about her conversations with Nichols but said nothing about an agreement. "Affidavits submitted on summary judgment do not deserve to receive unthinking acceptance by the court." *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991). The court will not deny summary judgment based on summary allegations that were apparently produced to shore up weakness that Defendant's brief exposed. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 959–60 (4th Cir.1984); *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir.1988). Moreover, even if Plaintiff "understood" there was a *quid pro quo*, she does not say Nichols said anything explicitly to create that understanding. Therefore, the affidavit does not show that Nichols engaged in affirmative misconduct to mislead Plaintiff.

allegations might be evidence of discrimination. However, there are two distinct types of misconduct: discriminatory misconduct and misconduct that forces an aggrieved party to sleep on her rights. *See Boarman v. Sullivan,* 769 F.Supp. 904, 908–09 (D.Md. 1991). Plaintiff must show the latter in order to state claims beyond the limitations period, *see Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58, but she has tried to show merely the former. Therefore, the court grants Defendant's motion to dismiss all Title VII claims for acts before September 16, 1993.

### B. Merits of Title VII Claim

Plaintiff's EEO complaint framed the following issue that the IRS accepted for investigation:

Whether the Complainant was changed to a lower grade Revenue Agent (Employment), GS 0512–11, position and reassigned to a Revenue Agent (General Program), GS 0512 11, position on September 19, 1993, after completion of a 12 month temporary promotion to a Revenue Agent (Employment), GS 0512–12, position and not provided noncompetitive promotion to a Revenue Agent (Employment), GS 0512–12, position, because of her sex (female) or race (African–American).

It is these claims, insofar as they date from September 16, 1993, that are not time barred under Title VII. However, Plaintiff has not produced evidence sufficient to survive summary judgment on these claims.

To establish her claim, Plaintiff must show that " 'but for the employer's motive to discriminate against [her] on the basis of [race or sex],' the discriminatory action would not have occurred." *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir.1995) (quoting *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992)). *See Fuller v. Phipps,* 67 F.3d 1137, 1144 (4th Cir.1995). Put another way, Plaintiff must show that race or sex was "a determining factor" in Defendant's adverse employment decision. *See id.* (equating the two phrasings of the test). Defendant is entitled to summary judgment if Plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a genuine factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *Henson,* 61 F.3d at 275–76.

A plaintiff can establish a *prima facie* case of discrimination in two ways. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir.1996). The first method is by ordinary standards of proof with direct and indirect evidence. *Id.; O'Connor,* 56 F.3d at 545. Plaintiff has not offered sufficient evidence to establish a *prima facie* case by this method.

A plaintiff alternatively can establish a *prima facie* case through the indirect burden-shifting method of proof developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Evans,* 80 F.3d at 959. The elements involved in a *prima facie* case are stated differently depending upon the type of personnel action at issue. Generally, a plaintiff must prove that: (1) She is a member of the protected class, *i.e.,* black or female; (2) she was eligible for a position, *i.e.,* she asked for the job and was qualified; (3) she suffered a materially adverse employment action; and (4) the defendant treated others of comparable qualifications outside the protected class more favorably than the plaintiff. *See Blistein v. St. John's College,* 74 F.3d 1459, 1467–68 & n. 7 (4th Cir.1996); *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 n. 1 (4th Cir.1989).

If Plaintiff has established a *prima facie* case, an inference of discrimination arises, and the burden of production shifts to Defendant to offer legitimate nondiscriminatory explanations for the allegedly discriminatory acts. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Evans,* 80 F.3d at 959. "The employer is not required to prove the absence of a discriminatory motive because the burden is one of production, not persuasion." *Henson,* 61 F.3d at 274–75 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 510–11, 113 S.Ct. 2742, 2747, 2749, 125 L.Ed.2d 407 (1993)). Once the employer meets its burden by producing evidence which, taken as true, would permit the

conclusion that there was a nondiscriminatory reason for the adverse action, the *McDonnell Douglas* presumption is no longer relevant. *Evans,* 80 F.3d at 959. At trial, the plaintiff bears the burden of persuasion to show by a preponderance of the evidence that the proffered reason was not the true reason for the employment decision *and* that the plaintiff has been the victim of intentional discrimination. *Hicks,* 509 U.S. at 510–11, 515–16, 113 S.Ct. at 2749, 2752.

 At the summary judgment stage, however, the plaintiff can avoid summary judgment by showing merely that the employer's explanations are pretextual or that a genuine factual dispute exists concerning the defendant's proffered reasons. *Henson,* 61 F.3d at 274–75; *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993). By "pretext," the plaintiff must show more than that the defendant's reasons are mistaken or not well thought out. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995) (plaintiff must show defendant is lying). Employers retain the right to make business decisions, even stupid ones, so long as they do not violate the law. *Henson,* 61 F.3d at 277. Through all of this complex scheme, the court has one simple objective: to find whether there is any evidence of a stated purpose to discriminate of sufficient probative force to reflect at least a genuine issue of material fact. *Id.* at 275.

On the complaints for which Plaintiff has exhausted her administrative remedies, she claims that the IRS discriminatorily took three actions: (1) her temporary position ended and was not renewed; (2) she was transferred to a different group; and (3) she was not promoted noncompetitively.[4] It is apparent that Plaintiff cannot create a genuine issue of material fact on the required elements of her *prima facie* case on any of these three. Even if she could, she does not controvert the IRS's legitimate reasons for taking those actions.

1. *Prima facie* case.

 a. End of temporary promotion.

 Plaintiff claims that the IRS discriminated against her by bringing her temporary GS–12 status to an end and failing to renew it. However, Plaintiff cannot make a *prima facie* showing of discrimination regarding this action. Assuming that the failure to renew a temporary promotion can be an adverse employment action,[5] Plaintiff has not shown that she was treated differently from similarly situated but unprotected employees. Avery Henline, a white male, served in a temporary GS–12 position at approximately the same time. He, too, was returned to a GS–11 position at the end of a year. Furthermore, two black females were lateralled into the positions that Plaintiff and Henline vacated. Finally, Plaintiff has not shown any evidence of anyone who was given a temporary position for more than one year or who served in a series of temporary promotions. Therefore, Plaintiff cannot survive summary judgment on any claims that her temporary promotion should not have ended.

 b. Failure to promote.

 Plaintiff also claims that she should have been permanently promoted to GS–12

---

4. Plaintiff's complaint contains a laundry list of other accusations that do not merit lengthy discussion. Plaintiff complains that someone removed her 1988 or 1989 Individual Development Plan from her Employee Performance File. This Plan, which Plaintiff prepared, showed that she wanted to develop toward GS–12. The Plan merely reflected Plaintiff's aspirations four or five years before the actionable period. Plaintiff does not dispute that it was old enough to fall within Defendant's document destruction period.

Plaintiff also complains that Eric Wile, a white male, was given supervisory responsibilities over her. Plaintiff, however, did not apply for Wile's developmental assignment.

Plaintiff complains that a departure evaluation was not provided when her temporary promotion ended, but she admits that she had been evaluated just days before.

Plaintiff includes a hostile work environment claim in her Complaint, but there is no evidence in the record that would support such a claim.

Also, Defendant has argued that summary judgment is proper because these claims are outside the scope of the EEO complaint, and Plaintiff has not contested this characterization.

5. The IRS contends that it cannot be an adverse action to return an employee to a prior grade after a temporary promotion, at least when it is clear that the promotion is not to exceed a date certain. The court does not address that contention.

through a noncompetitive process when the temporary promotion ended. Here, too, Plaintiff does not make out a *prima facie* case.[6] There are two ways to be eligible for permanent promotion at the IRS: an employee may compete for a promotion, or she may have a desk audit to determine the level of her work. Plaintiff has not shown that the IRS has promoted anyone any other way.[7]

Plaintiff's EEO complaint charges that the IRS failed to promote her noncompetitively. IRS employees can be promoted noncompetitively through a desk audit. The desk audit must show that they are working consistently at a higher level than they are graded. This was the procedure that Plaintiff first tried in 1991. Other employees also went through desk audits and were promoted, including Paula Southwell and Betty Garner in March 1993.[8] Plaintiff, however, did not request a desk audit at any time after September 1993. Thus, during the time actionable in this lawsuit, Plaintiff did not go through the only procedure that the IRS uses to promote employees noncompetitively. Therefore, she has not made out her *prima facie* case.

Plaintiff also complains about some competitive promotions that she did not receive, but, for various reasons, these complaints cannot satisfy her *prima facie* case. First, many of these promotions were before September 1993 and thus are time barred. Second, Plaintiff points to a number of promotions for which she did not compete and, therefore, on which she cannot make out a *prima facie* case: namely, the promotions of

Lori Roura, Donna Haney, Dick Bethel, and Ginny Fiore.[9] Third, Plaintiff alleges that she did not receive two promotions for which she applied during 1995. These promotions occurred after the EEO investigation was closed; thus, Plaintiff has not exhausted her administrative remedies on these allegations, and she cannot bring them as part of this lawsuit.

 There are two incidents that deserve closer scrutiny. Plaintiff says that she applied for two promotions that she did not receive in 1994 or 1995. Plaintiff lost one promotion in the Excise Division to Linda Hughes in 1994 or 1995 and one promotion in the General Program Group to an unknown white female in 1994. These promotions are not actionable in this lawsuit, however, because they are not sufficiently related to her EEO complaint to satisfy the principle of exhaustion of administrative remedies. The Fourth Circuit has recently described the interaction between the EEOC and judicial complaints:

> The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.

---

**6.** To prove her *prima facie* case, Plaintiff must show: (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination, for example a person outside the protected class was chosen or the position remained open for new applicants. *See Evans,* 80 F.3d at 959–60; *Carter,* 33 F.3d at 458.

**7.** In her deposition, Plaintiff makes conclusory allegations that some employees were automatically promoted at the end of their temporary positions. However, the documentary evidence that Plaintiff produces belies this assertion. Each temporary GS–12 promotion had a set expiration date, and the employees returned to GS–11 and then were promoted permanently

through normal channels. Indeed, Plaintiff admits in her deposition that many of the co-workers she names went through this process of returning from a temporary promotion, then competing for a permanent promotion. (*See* Pl.'s Dep. II at 84.)

**8.** Betty Garner, incidentally, is a black female.

**9.** In addition, Roura and Haney were not permanently promoted until March 19, 1995, after the commencement of this lawsuit. Furthermore, Plaintiff does not show that she was qualified for the GS–13 position that Fiore received on July 25, 1993. Defendant's evidence is that an employee must be at a grade level for one year before being eligible to compete for promotion to the next highest grade level, and Plaintiff had not met that requirement.

*Evans,* 80 F.3d at 962–63 (citations omitted). A plaintiff may not "file an across-the-board attack premised on a reasonable, but limited, investigation of a well-defined discrimination charge." *Pritchett v. General Motors Corp.,* 650 F.Supp. 758, 761–62 (D.Md.1986).

Plaintiff's EEO complaint charges that the IRS failed to promote her noncompetitively within the Employment Group following her temporary promotion. The nature of this charge is elucidated through Plaintiff's deposition testimony about her theory of her case. Plaintiff maintains that since 1989 she had been an employment tax specialist just like Sizer and Joe Fish. Thus she believes that, in September 1993 when her temporary promotion ended, it should have been renewed, or she should have automatically been made a permanent GS–12. This is what she apparently meant by her charge that she should have been noncompetitively promoted to GS–12 in the Employment Group.

This charge is quite different from allegations that she did not receive two specific competitive promotions in 1994 or 1995. At that point, she had already returned to the GS–11 position and moved to the General Program Branch. She was no longer performing significant amounts of GS–12 level work. These two positions were announced for competition, and Plaintiff unsuccessfully competed for them. The court concludes that these 1994 or 1995 failures to promote Plaintiff through the competitive process are not sufficiently related to her 1993 EEO complaint to be actionable.[10] *See Bolden v. PRC Inc.,* 43 F.3d 545, 553 (10th Cir.1994) (dismissing Title VII claim for failure to give subsequent promotion when EEOC charge contained generalized allegations), *cert. denied,* —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

In sum, Plaintiff has not shown that she met the requirements for a promotion that

would be covered by her EEO complaint; thus, she has not met the requirements of her *prima facie* case.

c. Transfer.

 Plaintiff claims that she was discriminated against when she was moved from the Employment Group to the General Program Section after her temporary promotion ended. However, Plaintiff has not created a genuine issue of material fact on whether an adverse employment action took place or on whether comparably qualified whites or males were treated differently.[11] Therefore, she has not made out her *prima facie* case to survive summary judgment.

Plaintiff has not produced any evidence that the transfer was an adverse employment action. When her temporary promotion ended, Plaintiff told her supervisors she wanted to remain in the Employment Group working on GS–12 level cases. This, however, was impossible. Defendant has shown uncontested evidence that its policy prohibited GS–11s from working primarily GS–12 cases; if they did, they would be entitled to pay as GS–12s. Plaintiff insisted that this is what she wanted to do, and she never expressed any preference between the available Employment and General Program GS–11 spots.

Therefore, with time running out on the temporary promotion, Defendant's supervisors moved her to the General Program Section. Even after Plaintiff was transferred to the General Program Section, she was still given the option to return to the Employment Group and perform GS–11 level work, but she declined.

It is evident, then, that the transfer was not an adverse employment action. Plaintiff cannot show that she was adversely affected by the move from the Employment Group

---

**10.** There appears to be another defect in any claims about Hughes' promotion. In paragraph 64 of her Complaint, Plaintiff implies that Hughes had not yet been permanently promoted when the Complaint was filed. (*See also* Answer ¶ 64.) Thus, it seems this promotion occurred in 1995 and is not a subject of this suit.

**11.** The *prima facie* elements for proving discriminatory transfer are: (1) the plaintiff is a member of the protected class; (2) she performed her job satisfactorily; (3) she suffered a materially adverse employment action in the form of a transfer; and (4) the defendant treated others outside the protected class more favorably. *See Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 134 (7th Cir.1993).

because she was repeatedly given the option to remain in the Employment Group.[12]

Additionally, Plaintiff cannot show that she was treated differently than comparably qualified employees outside the protected class. Avery Henline, a white male, had a temporary GS–12 promotion in the Employment Group that was set to expire about the same time as Plaintiff's temporary promotion. Both employees were returned to their GS–11 positions and were sent to the General Program Section.

2. Defendant's proffered legitimate reasons and Plaintiff's proffered evidence of pretext.

a. Failure to promote.

■ Additionally, Defendant has offered legitimate, nondiscriminatory reasons for its actions. Defendant has shown that Plaintiff's supervisors tried to announce a permanent GS–12 position for which Plaintiff could have competed in September 1993. They could not create a new position because the regional office ordered them not to make any new permanent GS–12 slots. The IRS had placed a cap on the number of GS–12s because the Greensboro office was already relatively overstaffed with employees at that level.

Plaintiff makes several arguments why this is pretext, but the evidence simply does not bear her out. First, Plaintiff believes that pretext is demonstrated by the fact that Connie Fish, an IRS staff assistant and the wife of Joe Fish, delivered the news about the staffing cap. She claims Connie Fish helped Joe Fish get promoted ahead of Plaintiff. However, when asked directly about the incident, Plaintiff testified that she did not think Connie Fish was lying about the staffing cap. Moreover, other IRS supervisors confirmed this staffing problem. Therefore, any questions about Connie Fish's motives do not provide evidence that the staffing cap did not exist.

Plaintiff also points to other promotions to show there was no staffing cap. However, there is no evidence that the IRS made any permanent promotions to the GS–12 level between March 1993 and sometime in 1994 or 1995. Further, the uncontradicted evidence demonstrates that even those March 1993 promotions were as a result of grievances that were resolved through desk audits; in essence, the IRS was forced to promote people in March 1993.

Plaintiff also shows that Ginny Fiore was promoted to GS–13 in July 1993. However, the IRS does not maintain that there was a cap on GS–13 promotions. It says the cap was made on a level-by-level basis, and Plaintiff does not produce any evidence to contradict that assertion.

Likewise, Plaintiff argues that the pretextual nature of Defendant's justifications is demonstrated by a report indicating that the IRS does not employ a proportional number of black women at levels GS–13 and above. Plaintiff, however, was seeking a promotion to GS–12, and there is no indication that there was a disparity at this level.

Finally, Plaintiff has produced evidence of temporary promotions to GS–12 during 1993, including those of Dick Bethel, Linda Hughes, and Donna Haney. However, evidence of temporary promotions does not contradict the IRS's evidence that there could be no permanent promotions.

Defendant has also introduced uncontradicted evidence of a legitimate reason not to promote Plaintiff through a noncompetitive process sometime after September 1993. It promotes employees noncompetitively through desk audits, and Plaintiff did not go through a desk audit during or after September 1993. Therefore, Plaintiff did not satisfy the prerequisites for a noncompetitive promotion.

In sum, Defendant has shown a legitimate reason not to promote Plaintiff permanently in September 1993. Plaintiff has not pro-

---

12. The court does not reach Defendant's alternative contention that this transfer could not be an adverse employment action because there was no reduction in grade, wage, or benefits. Courts have recently debated the topic of when a transfer can constitute an adverse employment action, and the law is unsettled. See Bradford v. Norfolk Southern Corp., 54 F.3d 1412, 1420–21 (8th Cir. 1995); Torre v. Casio, Inc., 42 F.3d 825, 831 n. 7 (3d Cir.1994). The court will not unnecessarily step into this quagmire since Plaintiff cannot show that she was forced to transfer at all.

duced any evidence of pretext that would create a genuine issue of material fact to justify a trial.

**b. End of temporary promotion.**

■■■ Defendant also explains the failure to extend Plaintiff's temporary position beyond one year. First, Plaintiff's supervisors felt that an extension would improperly circumvent IRS rules that prohibited temporary positions longer than one year. Plaintiff does not show that the rules were otherwise.

Second, Plaintiff's supervisors understood that a promotion would effectively become permanent if extended beyond one year. This would have run up against the staffing caps. Plaintiff admits that she would have become a permanent GS–12 if she had received an extension; that is what she wanted.

Therefore, Defendant has shown legitimate reasons for not extending the temporary promotion. Plaintiff has produced no evidence to show that these justifications were pretextual.

**c. Transfer.**

■■■ Finally, Defendant has shown a legitimate reason for moving Plaintiff to the General Program Section. Plaintiff refused to choose between GS–11 positions in the Employment and General Program Groups, instead insisting that she wanted to keep doing GS–12 level work in the Employment Group. Defendant could not have GS–11s doing primarily GS–12 level work because it would have to pay them as GS–12s. Therefore, Defendant removed Plaintiff's case files and transferred her to the General Program Section while she was on leave. George Curran, the branch manager, has testified that he moved Plaintiff so that she could gain exposure to a broader range of tax problems and be able to move more readily into a wider range of promotional opportunities.

Plaintiff does not succeed in showing that these reasons are prextexts for discrimination. First, she argues that Defendant should not have removed all of her files while she was on leave. However, just because Plaintiff might have preferred a different transition does not mean that Defendant discriminated against her by transferring her.

Also, Plaintiff argues that she wanted to stay in the Employment Group to gain specialized knowledge to make her more attractive for promotions within the Employment Group. Employers, however, are not mind readers.[13] When Plaintiff did not choose between the Employment and General Program GS–11 positions (instead maintaining that she wanted to keep performing GS–12 level Employment work), Curran assigned her based on his understanding of the long-term career development available in the groups. Courts have held that it is not "pretext" if an employer is mistaken, but instead only if an employer's reasoning is disingenuous. *Russell,* 51 F.3d at 68. Plaintiff thus does not create a genuine issue of material fact about whether Curran really believed that the General Program Section was the best place for Plaintiff to advance her career.

**II. *Equal Pay Act***

■■■ Plaintiff also claims that Defendant violated the Equal Pay Act, which provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying such wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

---

**13.** Further, Plaintiff contradicted her position by testifying explicitly that she did not want to remain in the Employment Group if it meant working as a GS–11 and going back to coordinating the SS–8 program. She considered that position beneath her skill level and detrimental to her career.

29 U.S.C. § 206(d)(1). To establish her *prima facie* case, a plaintiff "bears the burden of showing that she (1) receive[d] lower pay than a male co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions." *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir.1995). "Additionally, the plaintiff must identify a particular male 'comparator' for purposes of the inquiry, and may not compare herself to a hypothetical or 'composite' male." *Id.* A plaintiff cannot merely make conclusory allegations that she performed comparable work. *See Soble v. University of Md.*, 778 F.2d 164, 167 (4th Cir.1985). Instead, to survive summary judgment, she must produce evidence creating a genuine issue of material fact not only that she made lower wages than a male comparator, but also that she performed work that was substantially equal in skill, effort, and responsibility to her comparator under similar working conditions. *See Strag*, 55 F.3d at 950. Plaintiff must demonstrate specific facts on these issues, *id.* at 951, and make the comparison factor-by-factor with the male comparator, *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993). The jobs do not have to be identical but must be "substantially equal" or "have a common core of tasks." *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 351 (4th Cir.1994). Moreover, the Fourth Circuit has suggested that "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees." *Houck*, 10 F.3d at 206–07; *Strag*, 55 F.3d at 950.

■ After the employee makes out her *prima facie* case, the employer then bears the burden to prove that the pay differential can be explained by one of the four exceptions that the Equal Pay Act describes: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. *Id.* at 948.

An Equal Pay Act case may be commenced within two years after the cause of action accrues, except that a claim arising out of a willful violation may be commenced within three years. 29 U.S.C. § 255(a). Here, Plaintiff's Equal Pay Act claims not only lack merit, but also, to the extent that Plaintiff produces any evidence whatsoever, they are time barred.

### A. Allegations Within the Two–Year Statutory Period.

■ Plaintiff could survive summary judgment if she could show a genuine issue of material fact as to any violations since January 6, 1993. However, Plaintiff brings forward nothing to help her survive summary judgment.

On two separate days during her deposition, Plaintiff was asked when she performed equal work to men but was paid less. She responded that this occurred from 1990 to 1992. Those violations would be before the two-year limitation period.

However, she has also referred vaguely to an equal pay violation following her return to a GS–11 classification in September 1993. Plaintiff does not name a male comparator for this period. She has produced no evidence to show the work performed by any male.

Also, she has little evidence of the work she performed at the time. She presents a single list of cases that she handled in November 1993, and on it she has handwritten her impression of the grade levels that the cases should have carried. She has marked a few of the cases at level GS–12 or above.

However, her other evidence indicates she was not performing equal work to any GS–12s, male or female. She says that only about ten percent of her cases since September 1993 have been at level GS–12 or higher. She does not point to a single person who is compensated at GS–12 level but works only ten percent of his cases at that level. Therefore, any allegations of an equal pay violation since January 1993 are insufficient to create an issue of fact on Plaintiff's *prima facie* case and will be dismissed.

**B. Allegations Within the Three–Year Statutory Period.**

██ Plaintiff faces a stiffer task on claims between January 1992 and January 1993. To recover for acts more than two years before her Complaint, she must show that Defendant committed a "willful" violation. *See Bankston v. Illinois,* 60 F.3d 1249, 1253 (7th Cir.1995); *Harter v. GAF Corp.,* 967 F.2d 846, 851 (3d Cir.1992). This standard is met only if Defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Plaintiff brings forth insufficient evidence about the January 1992 to January 1993 period to survive summary judgment.

At her deposition, Plaintiff was asked specifically when and with whom she was being paid unequally. She responded that from 1990 to September 1992, she was paid less than Joe Fish and Bill Sizer to perform equal work. Plaintiff also contends that she has satisfied her *prima facie* case by showing that Sizer was a GS–12 when he preceded her as SS–8 coordinator. The court will take up each of these in turn.

Plaintiff does not produce enough evidence on whether she performed equal work but was paid less than Fish and Sizer from January 1992 (the start of the statutory period) to September 1992 (when she was temporarily promoted). Plaintiff has shown that she received less pay: Fish and Sizer were GS–12s while she was a GS–11.[14] However, Plaintiff has done nothing to show that the jobs were "substantially equal." Plaintiff has not produced any lists of cases that she or the male comparators handled or any similar evidence to show the complexity of their jobs.

Indeed, her testimony indicates that she was not performing substantially equal work. Plaintiff worked some GS–12 and GS–13 level cases, but much of her time was spent as the SS–8 coordinator, which she admits was work at or below GS–11 level. Therefore, she admits that a substantial fraction of her duties were not equal in complexity and skill level as those that Sizer and Fish were supposed to handle as GS–12s.[15] Without any other evidence that would allow the fact-finder to compare the tasks that she and her comparators were actually working, Plaintiff cannot make out her *prima facie* case.

Plaintiff also takes another tack. Plaintiff may compare her salary with her male predecessor's to demonstrate that she received less pay for equal work. *Brinkley–Obu,* 36 F.3d at 343. Sizer was a GS–12 when he coordinated the SS–8 program, but Plaintiff was a GS–11 when she took over the SS–8 duties. However, Plaintiff has produced insufficient information to allow a fact-finder to compare either (1) the complexity of her and Sizer's duties other than the SS–8 work, or (2) the relative amount of time that she and Sizer spent on SS–8 work.[16] Plaintiff, therefore, cannot survive summary judgment on these claims.[17]

---

**14.** Plaintiff was a part of a national grievance against the IRS on behalf of workers who had spent a certain percentage of their time working above grade. These workers claimed that the above grade work entitled them to pay at the next highest grade. The claim had nothing to do with discrimination. As a part of the settlement, Plaintiff has been compensated as a GS–12·for her work during this time. Therefore, presumably she could recover only liquidated damages for this period.

**15.** Plaintiff points to the similarity of her and her comparators' formal job descriptions; however, the actual job content, not the official job description, controls in an Equal Pay Act case. *Brennan v. Prince William Hosp. Corp.,* 503 F.2d 282, 288 (4th Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975).

**16.** Vernon Butler, one of Plaintiff's supervisors, offers uncontradicted testimony that the SS–8 coordinator duties "had gotten significantly heavier as time went along.... I just recall that the volume was ever increasing." (Butler Dep. at 99.) He also said that no one else worked on SS–8 matters the same amount as Plaintiff.

**17.** Likewise, in the affidavit that Plaintiff filed in response to Defendant's summary judgment motion, she offers an additional comparator: Rudy Broughton, a GS–13 level employee whom she maintains performed the SS–8 duties in Birmingham, Alabama. Plaintiff offers no records of Broughton's service that would indicate what portion of his time he spent on the SS–8 duties and what other cases he was handling.

 In addition, Plaintiff produces no evidence of systematic discrimination that this circuit has suggested might be necessary to prove an Equal Pay Act claim. According to the division's EEO and Diversity Officer, women are represented at the GS–12 level in Plaintiff's division in proportion to the composition of the workforce. While this absence of evidence of systematic discrimination might not alone be enough to defeat Plaintiff's claim, it supports the conclusion that summary judgment is proper. *Strag,* 55 F.3d at 950.

Even if Plaintiff could create an issue of fact on her *prima facie* case, she still has brought forth no evidence that would demonstrate that the IRS willfully violated the Equal Pay Act. Defendant has produced uncontroverted evidence that Plaintiff's salary was a result of an application of the General Schedule of federal wages, 5 U.S.C. § 5332, a facially gender-neutral system. This is the generally applicable federal pay scheme, and the government compensates equally all employees of the same grade and step. Plaintiff contends that, as a GS–11, she was performing the same work as Sizer and Joe Fish, who were GS–12s. Therefore, Plaintiff's claim boils down to a contention that she should have been paid as a GS–12 during 1992.

However, Plaintiff cannot show that Defendant willfully violated the Equal Pay Act by failing to compensate her as a GS–12 in 1992. Plaintiff went through a desk audit in 1991 to determine whether she was working at a GS–12 level and would merit a promotion. The desk audit showed that Plaintiff was entitled to a GS–11 rating. Plaintiff claims that the desk audit improperly evaluated only her SS–8 duties and not her more complicated work. However, the desk auditor, Betty Whitten, has testified that she audited Plaintiff's work just as she audited every other employee: by looking at how she spent the majority of her time. Further, Plaintiff did not appeal the desk audit to give the IRS the chance to resolve any errors through its formal procedures. Finally, when Plaintiff's supervisor, Lori Nichols, learned of Plaintiff's

complaints in early 1992, she allegedly told Plaintiff that she would try to have Plaintiff promoted, at least temporarily, and then she did have Plaintiff temporarily promoted. Thus, any evidence is missing of a violation in knowing or reckless disregard of the law.[18]

In sum, the court concludes that Plaintiff has not brought forth sufficient evidence of a violation, much less a willful violation, to survive summary judgment. Plaintiff is not expected at this point to justify task-by-task and day-by-day exactly the responsibility, skill, and effort required of her and her comparators. However, she has produced no evidence that would allow a fact-finder to do more than speculate as to the work performed by her and her comparators. Defendant is entitled to summary judgment on Plaintiff's Equal Pay Act claims from January 1992 to January 1993.

## CONCLUSION

For the reasons set forth above, the court will order that Robert Rubin be substituted for Lloyd Bentsen as Defendant in this case and will grant Defendant's motion to strike Plaintiff's brief entitled "Plaintiff's Response to Defendant's Reply Brief." The court will grant summary judgment to Defendant, and the case will be dismissed.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### *ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Robert Rubin be **SUBSTITUTED** for Lloyd Bentsen as Defendant in this case.

IT IS FURTHER ORDERED that Defendant's motion to strike Plaintiff's brief entitled "Plaintiff's Response to Defendant's Reply Brief" be, and the same hereby is, **GRANTED,** and said brief is **STRICKEN.**

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendant's motion for summary judgment be, and the same hereby

---

18. The court will not reach Defendant's additional contention that it fits within a statutory exclu-

sion because the General Schedule is a "merit system" or "factor other than sex."

is, **GRANTED,** and this action is **DIS-MISSED** with prejudice.