Suzanne CALLENDER

v.

ERGON, INC.

Civil Action No. 5:95–CV–64(Br).

United States District Court,
S.D. Mississippi,
Western Division.

April 18, 1996.

Richard Earl Smith, Jr., Vicksburg, MS, for plaintiff.

Paula A. Graves, Jeffrey A. Walker, Jackson, MS, for defendant.

### *MEMORANDUM OPINION*

BRAMLETTE, District Judge.

Before the Court is the motion of the Defendant, Ergon, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The instant action involves claims of sexual harassment pursuant to 42 U.S.C. § 2000e–5, commonly referred to as Title VII of Civil Rights Act of 1964. In support of said motion, Ergon argues that even assuming the plaintiff, Suzanne Callender ("Callender"), was subjected to a sexually hostile work environment, no genuine issue of material fact exists with regard to the prompt remedial action taken by Ergon. After thoroughly reviewing the memorandum of counsel, the plaintiff's response,[1] the attached documentation, the applicable statutory and case law, and being otherwise fully advised in the premises, this Court is of the opinion that Ergon's motion for summary judgment is well-taken and

should be granted for the reasons set forth below:

### *STANDARD OF REVIEW*

■ Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted); *see Berry v. Armstrong Rubber Co.,* 780 F.Supp. 1097, 1099 (S.D.Miss.1991), *aff'd,* 989 F.2d 822 (5th Cir.1993), *cert. denied,* 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The moving party bears the initial burden of establishing the absence of genuine issues of material fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir.1994) (en banc). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. *Little,* 37 F.3d at 1071. The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Fields v. South Houston,* 922 F.2d 1183, 1187 (5th Cir.1991). A mere scintilla will not defeat a motion for summary judgment; there must be sufficient evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

---

1. It is important to note that the Court is considering defendant's motion without the benefit of plaintiff's memorandum brief in response. Callender motioned this Court for an extension of time in which to file her response to Ergon's summary judgment motion. This Court granted Callender an extension through January 19, 1996. On January 22, 1996, Callender filed her two page response merely denying defendant's averments.

*Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate even if "there is some metaphysical doubt as to the material fact"). If the nonmovant satisfies her burden, summary judgment will not be granted. *Fields,* 922 F.2d at 1187. But, when the nonmovant is faced with a motion for summary judgment "made and supported" as provided by Rule 56, the nonmovant cannot survive the motion by resting on the mere allegations of her pleadings. *See, e.g. Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 860 (5th Cir.1986); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195–96 (5th Cir.1986); *John Hancock Mut. Life Ins. Co. v. Johnson,* 736 F.2d 315, 316 (5th Cir.1984); *Daniels v. All Steel Equip., Inc.,* 590 F.2d 111, 113–14 (5th Cir.1979); *see also* Fed.R.Civ.P. 56(e).

### FINDINGS OF FACT

Callender was employed by Ergon's construction division as a secretary in Vicksburg, Mississippi, from April 27, 1994 to July 11, 1994. Callender avers that on several occasions during the two and one-half month period, her supervisor, Jerry Haynes, acted in such a manner as to create a sexually hostile work environment. Specifically, Haynes engaged in "[l]ocker room talk" in her presence, inquired as to whether Callender was "carrying a condom," and patted her buttocks while commenting favorably as to her derriere. Lastly, Callender avers that she heard from Bobby Wallace, who remains unidentified, that "if you didn't sleep with [Haynes], that he would find a way to get rid of you."

Callender testified that she knew that such behavior would not be condoned by Ergon. Accordingly, on the afternoon of June 29, 1994, Callender left work approximately fifteen minutes early for the purpose of contacting Kathy Stone, an Ergon executive in Jackson, Mississippi. Callender described her situation to Stone. Callender testified that Stone was "empathetic and sympathetic." More importantly, Stone informed Callender that such conduct would not be tolerated and quickly remedied.

On July 1, 1994, Haynes' supervisor, Larry Hartness, met with Haynes in regard to Callender's complaint. The meeting lasted for approximately one hour. Once the meeting was over, Callender testified that her fellow employees were supportive of her efforts.

Subsequent to the meeting with Hartness, Haynes asked Callender to step into his office. Callender described Haynes as "very upset and distraught and shaking." The two discussed the matter wherein Haynes offered his apologies. As the conversation ensued and the alleged instances discussed, both parties became angered. Callender explained that Haynes appeared very mad and embarrassed. Callender herself was mad and admits that both she and Haynes have tempers. The conversation culminated with Haynes accusing Callender of lying and Callender throwing her chair against the wall as she left the office. Reflecting upon the encounter with Haynes, Callender testified that she was left with the impression that Haynes was reprimanded for his behavior.

The record demonstrates that no incidents of sexual harassment occurred subsequent to the July 1, 1994, meeting between Hartness and Haynes. Callender testified that Haynes "wouldn't even look at me, wouldn't call my name." Callender, however, described this as a form of retaliation. Callender explained by arguing that "everyone in the shop was told not to speak to Suzanne, not even to call me by name. . . ."

Approximately two weeks after the July 1 meeting, Callender was hospitalized for gynecological surgery. Callender was informed that her position would· be terminated because of her medical condition, i.e. her inability ·to return to work.[2] Callender was informed that if she were able to physically return to work and a vacancy existed, she would be considered for the position. Callender testified that she was satisfied with this arrangement inasmuch as she did not want to face Haynes again.

**2.** The defendant argues in its brief that Callender terminated her employment. Callender testified that Ergon terminated her employment. This dispute is immaterial inasmuch as the plaintiff admits that regardless of who initiated the termination, it was done solely for medical reasons.

## CONCLUSIONS OF LAW

■ The critical issue addressed in this motion is whether Ergon, knowing about Callender's claims of sexual harassment, failed to take prompt remedial action.[3] The requirement of prompt remedial action demands "action which was 'reasonably calculated' to end the harassment." *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 449 (5th Cir. 1994). A company's response to complaints of a sexually hostile work environment should be assessed proportionately to the seriousness of the offense. *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir.1987). Title VII does not require an employer to use the most extreme sanction available. *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir.1992); *see Caleshu v. Merrill Lynch, Pierce, Fenner & Smith*, 737 F.Supp. 1070, 1083 (E.D.Mo.1990) (defendant not held liable where "[t]he evidence [was] clear that once DeStefano learned of the problem ... he took immediate action. He talked to Borgogoni and asked him to leave plaintiff alone.... All harassment stopped."), *aff'd*, 985 F.2d 564 (8th Cir.1991).

■ Haynes was reprimanded by his supervisor approximately forty-eight hours following Callender's complaint. In addition, Kathy Stone was supportive, understanding, and helpful. Following Ergon's response, the alleged sexual harassment stopped. Stated otherwise, the summary judgment record before the Court conclusively establishes that the incidents of sexual harassment ceased following the meeting between Haynes and Hartness. Under such facts, this Court is of the opinion that Ergon is not liable inasmuch as Ergon took prompt remedial action in response to Callender's complaint which eliminated the improper sexual conduct. *Garcia*, 28 F.3d at 448.

■ Callender did testify that she felt Haynes was "retaliating" against her. This subjective belief is grounded on the fact that Haynes would not speak to Callender subsequent to his meeting with Hartness. It would be unreasonable for this Court to believe that situations such as this would not create any animosity. Unfortunately, this type of litigation rouses a myriad of emotions. It affects not only one's employment and reputation, but his/her self-worth as well. This Court cannot create a perfect world within a work environment nor can we require employers to do the same. Rather, we must ensure that employers prevent their working conditions from palpably deteriorating because of sexually hostile conduct.[4]

## CONCLUSION

In conclusion, we believe Ergon did what a company ought to do when confronted with complaints of sexual harassment. Ergon took the allegations seriously and immediately instructed Haynes' supervisor to meet with him regarding the complaint. As a result, the incidents of sexual harassment ceased. Accordingly, summary judgment is appropriate. An order dismissing this cause with prejudice shall follow.

### SO ORDERED AND ADJUDGED.

---

3. *Jones v. Flagship International*, 793 F.2d 714, 719–20 (5th Cir.), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1986) sets forth the following elements of a claim of hostile work environment: (1) the plaintiff belongs to a protected group; (2) was subjected to unwelcomed sexual harassment; (3) the harassment was based upon her sex; (4) the sexual harassment was so pervasive as to alter her conditions of employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

4. We note that Callender testified that everyone in the shop was told to ignore her. Callender has offered no evidence that anyone in the shop communicated such a request. Callender has not demonstrated that this belief amounts to anything more than Callender's subjective assessment. Moreover, this conduct contradicts Callender's initial testimony that her co-employees appeared supportive following the meeting between Haynes and Hartness. This evidence is simply insufficient to demonstrate any retaliatory conduct on the part of Ergon.