Percy Carl WILSON, Plaintiff,

v.

Togo D. WEST, Jr., Secretary of the Army, Defendant.

Civil Action No. 5:95–CV–136BrS.

United States District Court, S.D. Mississippi, Western Division.

Jan. 29, 1997.

Opinion Supplementing Decision March 24, 1997.

Richard R. Grindstaff, Jackson, MS, for Percy C. Wilson.

Percy C. Wilson, Vicksburg, MS, pro se.

Carlton W. Reeves, U.S. Attorney's Office, Jackson, MS, for Togo D. West.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the defendant Togo D. West, Jr., Secretary of the Army's motion for summary judgment. Having carefully considered the motion, response, memoranda of the parties and supplementing documents, the Court finds as follows:

Percy Carl Wilson has sued the Secretary of the Army alleging that he was discriminated against while employed by the United States Army Corps of Engineers, Vicksburg District ("Corps"). The Court permitted Wilson to proceed *in forma pauperis*. He later obtained private counsel, who filed an Amended Complaint.

Wilson began working with the Corps in 1974 as a messenger. By the time he retired in June, 1993, he was an engineering technician/contract specialist. (Plaintiff's Deposition, at 11–14). Because he believed that he had been discriminated against, Wilson met with an EEO counselor, Eunice Polk, on September 20, 1993,[1] and submitted an informal complaint of discrimination. (Equal Employment Opportunity Informal Complaint completed by counselor; EEO Pre–Complaint completed by Wilson). In the Pre–Complaint Wilson alleged that he was discriminated against because of his race. He asserted that he was not given the same opportunities to advance as his white co-employees were given, and that one of his supervisors made racial remarks while on the job. *Id.* Wilson then filed a Formal Complaint of Discrimination on October 19, 1993. In the formal complaint, Wilson articulated several bases of discrimination: race, handicap (mental and physical), sex, age, and reprisal—"racial, non-promotion, overworked, past EEO complaints."

1. In Wilson's Pre–Complaint the initial contact is recorded as September 27, 1993. The EEOC decision records the date as September 20, 1993.

Construing the discrepancy in the plaintiff's favor, the Court uses the earlier date.

The Pre–Complaint and the Formal Complaint both allege that the date of the most recent acts of the discrimination occurred in April, 1993. The Corps, through Ida F. Smith, Operating Equal Employment Opportunity Officer, acknowledged, by letter, receipt of Wilson's formal complaint. This letter advised Wilson of the EEO procedures with regard to the assignment and investigation of his case. By letter of November 1, 1993, Smith advised Wilson that his complaint would be dismissed as required by 29 C.F.R. 1614.107 because it was untimely. In particular, the letter explained:

> The most recent date you could provide to the EEO Counselor for when these alleged discriminatory actions occurred was sometime in April 1993. The date of the initial contact with the EEO Office was September 20, 1993.
>
> In order for a complaint to be considered timely filed, the matter complained of must have been brought to the attention of an EEO Counselor or other EEO officials within forty-five calendar days of occurrence....

*Id.*

The letter further advised Wilson that he could appeal the dismissal of his complaint to the EEOC. Wilson appealed. In an undated letter, Wilson advised that he was "dissatisfied with th[e] decision," and asked that the letter be accepted as a formal request to appeal the Corps' decision.

On March 31, 1994, the EEOC issued its decision regarding Wilson's appeal. The decision focused its attention on whether Wilson should have been given additional time in which to initiate contact with an EEO counselor because of his illness. The decision noted that the dispositive issue "is whether [Wilson] was prevented by circumstances beyond his control from contacting a counselor by June 14, 1993." The EEOC also found that the Corps had not considered the relevancy of Wilson's condition in its determination on this timeliness issue and further concluded that it was unable to determine whether Wilson's medical condition was a circumstance beyond his control which prevented him from contacting the counselor within the time limits. Because of these gaps, the EEOC reversed the Corps' decision and remanded the case to the agency for supplemental investigation to determine whether Wilson was prevented by circumstances beyond his control from contacting a counselor within the time limits.

The agency completed its supplemental investigation and issued a decision finding that Wilson failed to demonstrate that he was prevented by circumstances beyond his control from contacting an EEO counselor in a timely manner. Wilson then filed another appeal to the Commission. The EEOC affirmed the Corps' decision dismissing his complaint. Not satisfied with that result, Wilson then submitted a timely request for the EEOC to reconsider its decision; however, the request was denied. Wilson then timely filed this civil action.

The issue presently before this Court is whether the agency acted properly in dismissing Wilson's Complaint because Wilson failed to contact an EEO counselor within the time period established by law.

The Supreme Court has held that Rule 56(c) mandates summary judgment in any case where a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. at 2548, 2552, 91 L.Ed.2d 265 (1986). A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court stated:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

> As to materiality, the substantive law will identify which facts are material....

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). When the moving party has carried the Rule 56(c) burden, the opposing party "is obligated to oppose

the motion either by referring to evidentiary material already in the record or by submitting additional documents which set out specific facts indicating the existence of a genuine issue for trial." *Callender v. Ergon, Inc.,* 928 F.Supp. 665, 666 (S.D.Miss.1996). The nonmoving party cannot satisfy its burden by referring back to the allegations of its pleadings. *Leslie v. Ingalls Shipbuilding, Inc.,* 899 F.Supp. 1578, 1580 (S.D.Miss.1995). A claim that further discovery or a trial might reveal facts which the plaintiff is currently unaware of is insufficient to defeat the motion. *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1414–15 (5th Cir.1987). If the nonmovant fails to satisfy its burden, summary judgment is required. *Leslie,* 899 F.Supp. at 1580; *Callender,* 928 F.Supp. at 667.

■■■ When Congress enacted Title VII it included certain mandatory administrative requirements as a prerequisite to bringing an employment discrimination claim in federal court. Specifically, Section 717 of Title VII, 42 U.S.C. § 2000e–16(b) (1981) requires the establishment of procedures for the administrative processing of Title VII complaints. Among those established procedures is the requirement of timely filing of administrative charges as a prerequisite to filing a district court action. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Thus, in order to maintain a lawsuit pursuant to Title VII, Wilson was required to timely exhaust his administrative remedies. *Brown v. General Services Administration,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976). The exhaustion requirement includes timely compliance with any regulations governing the processing of complaints. *See Janneh v. Runyon,* 932 F.Supp. 412, 416 (N.D.N.Y. 1996) (citations omitted). "These rules are

not mere technicalities, but are parts of Congress' statutory scheme of achieving a 'careful blend of administrative and judicial enforcement powers.' " *Thompson v. West,* 883 F.Supp. 1502, 1507 (M.D.Ala.1995) (citation omitted) The administrative time limits, moreover, are akin to statutes of limitation. *Bohac v. West,* 85 F.3d 306, 311 (7th Cir. 1996).

Title 29 C.F.R. § 1614.105, promulgated pursuant to the statutory mandate of Title VII, sets forth applicable filing deadlines for the pre-complaint processing stage of the EEO administrative process. Specifically, the applicable section of the Code of Federal Regulations provides that "[a]n aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or in the case of personnel action, within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105(a)(1).

It is undisputed that EEO notices were posted on a bulletin board at the Vicksburg District office, advising employees that they had forty-five (45) days from the date of the alleged act of discrimination to initiate contact with an EEO Counselor. (Declaration of Harry G. Brown). The plaintiff knew that important information, including information regarding the EEO process, was placed on the bulletin board. (Plaintiff's Deposition, at 18–19). Moreover, this was not Wilson's first EEO complaint, so he was no stranger to the process. (Plaintiff's Deposition, at 97). *See Bohac,* 85 F.3d at 313.

■■ The last day an alleged discriminatory act could have occurred was April 5, 1993, the plaintiff's last day of work.[2] The plaintiff filed his EEO claim on September 20, 1993,[3] which was at least five months after the last alleged act occurred. The applicable EEO

---

**2.** The plaintiff alleges that the acts of discrimination occurred in April of 1993. (Pre–Complaint, EEO Complaint). The defendant contends that it is more likely that the acts occurred before April, 1993, and cites *Stewart v. Widnall, supra,* at 13, quoting *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) ("In determining when the limitation period [begins] to run, 'the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts be-

came most painful.' "). However, for purposes of the motion for summary judgment the Court accepts the plaintiff's version.

**3.** See footnote 1. Although the defendant claims that the plaintiff did not initiate contact with an EEO counselor until, at the earliest, September 20, the plaintiff apparently claims he contacted an EEO officer on August 18, 1993. See discussion *infra.*

regulations provide that an Agency *shall* dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in 29 C.F.R. § 1614.105. *See* 29 U.S.C. § 1614.107(b). If an EEOC charge is filed untimely, a suit based upon the untimely charge shall also be dismissed. *See Tidmore v. D'Amours,* Civ. Act. No. 3:95–cv–192(B)(N) (S.D.Miss. Dec. 7, 1995), at 5, *citing Wilson v. Secretary,* 65 F.3d 402, 404 (5th Cir.1995); *Barrow v. New Orleans S.S. Ass'n.,* 932 F.2d 473, 476–77 (5th Cir.1991); *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483, 1485 (11th Cir.1984); *Templeton v. Western Union Tel. Co.,* 607 F.2d 89, 91 (5th Cir.1979) (*per curiam* ). *See also Stewart v. Widnall,* Civ. Act. No. 1:95–cv–436(G)(R) (S.D.Miss. Sept. 30, 1996), at 7 (failure to timely file EEOC complaint divests Court of jurisdiction to consider Title VII action).

 Failure to notify the EEO counselor in a timely fashion bars a claim absent a defense of waiver, estoppel or equitable tolling. *Pacheco v. Rice, Secretary of Air Force,* 966 F.2d 904, 905 (5th Cir.1992); *Benford v. Frank,* 943 F.2d 609, 612 (6th Cir.1991); *Johnson v. United States Postal Service,* 861 F.2d 1475, 1480–81 (10th Cir.1988). It is the plaintiff's burden to show facts justifying equitable tolling. *See McClamb v. Rubin,* 932 F.Supp. 706, 713 (M.D.N.C.996); *Hamilton v. Komatsu Dresser Industries, Inc.,* 964 F.2d 600, 606 (7th Cir.), *cert. denied,* 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992).

The plaintiff contends that his failure to contact an EEO Counselor within forty-five days should be excused because of his medical condition. (Complaint, Amended Complaint) The Fifth Circuit has recognized three bases for equitable tolling:

> (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of [his] rights.

*Wilson, supra,* 65 F.3d at 404, *citing Chappell v. Emco Machine Works Co.,* 601 F.2d 1295, 1302–03 (5th Cir.1979). These, however, are not the only bases for tolling. *See*

*Blumberg v. HCA Mgt. Co., Inc.,* 848 F.2d 642, 644 (5th Cir.1988). But the courts have "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Wilson,* 65 F.3d at 404, *quoting Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). The plaintiff's only asserted excuse for his failure to timely initiate contact with the EEO Counselor is that he was too ill. On its face, this would appear to be a valid excuse, particularly since an agency is required to extend the forty-five-day time limit when "despite due diligence the claimant was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2).

That the plaintiff suffered from a mental and/or physical condition and was hospitalized for a period prior to contacting the EEO Counselor is not in dispute. This does not necessarily require the tolling of the time limitation, however.

Wilson was hospitalized from April 6 through April 27, 1993, for depression. (Plaintiff's Deposition, at 49, 103). He was hospitalized again from June 22 through July 2, 1993. Assuming the alleged acts occurred on April 5, and assuming for purposes of argument that the plaintiff was prevented from contacting the counselor while he was in the hospital, the time for making contact would have begun April 28, the day after his release from the hospital. There was sufficient time between his two hospitalizations, some fifty-five days, during which he could have contacted the EEO counselor. Even if the time did not begin running until his second release from the hospital, his EEO pre-complaint was not filed until seventy-nine days following his second release.

Therefore, it is not enough for the plaintiff to prove that he was prevented from contacting an EEO counselor while in the hospital. He must prove that he was prevented from contacting the counselor or filing during the periods between his two hospital stays and after his second release.

As a further argument against equitable tolling, the defendant offers proof that the plaintiff managed to prepare and file other types of claims, and take care of other aspects of his business, during the same period that he suffered from these conditions. During the time of his first hospitalization and upon his release from the hospital on July 2, 1993, the plaintiff completed forms and other materials related to his insurance (*See* FEGLI Agency Certification of Insurance Status form); his disability/retirement (*See* CSRS Disability Retirement Application Checklist form); his retirement/annuity; and a claim for workers' compensation (*See* U.S. Dept. of Labor Claim for Compensation). (Plaintiff's Deposition, at 50–63).

In his application for disability, Wilson provided detailed information to questions concerning his medical condition and how it affected his job performance. In particular, he gave a carefully crafted explanation of how he had become deficient in his job and how those deficiencies were related to his medical conditions:

> EEO opportunities were not provided to me. I was not allowed to attend training courses. Promotion opportunities were gained through forced desk audits. . . . My intellectual ability was challenged on many occasions. I was placed in an unhuman [sic] position by word of mouth from supervisors, team leaders and Branch Chiefs, but I felt that I met all of the requirements of completing my job as a Contract Specialist. I was not formally assigned the official duties of a Contract Specialist. However, I performed Contract Specialist duties daily without an adequate job title. Therefore, I was not paid at the same pace/grade level as "white" counterparts. My team leader, Joe Hendrix, stated on several occasions that the "NAACP" is no better than the "KKK" and he highly supports the "KKK".

(Plaintiff's Checklist Information; Deposition of Percy Carl Wilson, at 51–58).

At the same time that he was preparing his disability/retirement information, Wilson was also seeking workers' compensation benefits. This also necessitated the gathering of information and the completion of several forms. (Plaintiff's Deposition, at 58–63). Wilson was able to complete the information while still in the hospital. (Plaintiff's Deposition, at 59, 103–105). To substantiate his claim for workers' compensation, he submitted the same information that he had presented to support his disability/retirement claim. (*Id.* at 61). The Department of Labor acknowledged receipt of the plaintiff's claim and advised him that it needed additional information. (Letter of June 16, 1993, from Patricia A. Jones, Claims Examiner; Plaintiff's Deposition, at 63–64). A second request for additional information was sent to the plaintiff on August 9, 1993 (Letter from Mavis L. Leto, Claims Examiner). Wilson sought the assistance of Corps personnel (Plaintiff's Deposition, at 112–13), and filed a response letter (Plaintiff's Deposition, at 64–69); *see also* Plaintiff's Response Letter, dated August 18, 1993, in which he sets out in detail various acts of differential treatment which he alleges contributed to his stress problem:

- Supervisors treated him unfairly;
- Overloaded with work;
- Racial tension on the job;
- He was kept isolated/supervisors and co-workers would not interact with him;
- Received few awards;
- He was given code-name, "Bubba"; and
- He was not permitted to go to training.

Wilson also addressed the Labor Department's question regarding whether he had filed any grievance or EEO complaint. He explained:

> I have not filed a grievance or EEO complaint on the material discussed in para one above. However, today, 18 August 1993, I have talked to an EEO specialist in the EEO office of the Vicksburg District. It is my intention to pursue this through the appropriate EEO channels. I do not know what the outcome will be.

(Plaintiff's Response Letter, dated August 18, 1993; Plaintiff's Deposition, at 63–65; 112–113).

The plaintiff's workers' compensation claim was denied by letter dated September 15, 1993. (Letter from Debra W. Harvey, Senior Claims Examiner; Plaintiff's Deposition,

at 69–72). By letter of September 29, 1993, the plaintiff appealed that decision. It was not until after his workers' compensation claim had been denied that Wilson initiated the EEO process. (Plaintiff's Deposition, at 80–87). His pre-complaint submissions consisted of substantially the same complaints presented with his disability/retirement and workers' compensation materials. (Attachment to Pre-Complaint; Plaintiff's Deposition, at 85). His formal complaint included the same information that he submitted with his workers' compensation claim. (Plaintiff's Deposition, at 89–90; Formal Complaint of Discrimination; U.S. Dept. of Labor Claim for Compensation).

The defendant contends that Wilson simply chose to postpone his EEO complaint until after his workers' compensation claim was denied, citing *Bohac, supra,* 85 F.3d at 313 (" 'One who decides to follow a schedule of his own devising, for reasons of his own invention, has no legitimate complaint when the tribunal adheres to the rules,' " *quoting White v. Bentsen,* 31 F.3d 474, 476 (7th Cir. 1994), *cert. denied,* 514 U.S. 1050, 115 S.Ct. 1426, 131 L.Ed.2d 309 (1995)).

After his first hospitalization, the plaintiff went to the personnel office for assistance in preparing his workers' compensation filing. (Plaintiff's Deposition, at 112–113). This was not the first time the plaintiff had sought the assistance of personnel to aid in his workers' compensation matter. In fact, during the same period for which the plaintiff now claims he was mentally incompetent, he turned to Harry Brown, an EEO officer, for assistance in his workers' compensation efforts. (Plaintiff's Deposition, at 116). After being released from the hospital, he went to Corps personnel in an attempt to process his appeal.

The defendant asserts that the plaintiff had all the facts necessary to require a rea-

sonable person to initiate contact with an EEO counselor. Further, the defendant asserts that since the plaintiff sought out corps employees (including EEO personnel) for assistance in completing his workers' compensation claim, his disability/retirement, and his appeal classification, he could have initiated contact with an EEO counselor as well. *See Stewart v. Widnall, supra,* at 14, *citing, Blumberg, supra,* 848 F.2d at 645; and *Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1280 (5th Cir.1986). As previously noted, the plaintiff had utilized the EEO process before and was aware of the filing procedure. (Plaintiff's Deposition, at 97).

In order to be excused for not contacting an EEO counselor within the time prescribed by law, the plaintiff must show that he acted with "due diligence," and that he was "prevented by circumstances beyond his or her control from contacting the counselor." 29 C.F.R. § 1614.105(a)(2).

The plaintiff submits that (1) he was prevented by his medical condition from contacting an EEO counselor; (2) the contact, when made, was made by the plaintiff's wife; (3) the handling of the plaintiff's business, including the preparation of paperwork regarding his various claims, was done by his wife; (4) his wife was "mislead [sic] about the time and deadlines for filing a complaint and was not told of the deadlines when asked." (Plaintiff's Memorandum, p. 3). There is a fifth issue which, while not specifically argued, finds support in the facts as alleged by the plaintiff and warrants some consideration by the Court, *i.e.,* that if the defendant caused the plaintiff's mental condition, there might be a stronger argument in favor of equitable tolling.[4]

*Mental Disability and Equitable Tolling*

There is no absolute rule that would require tolling whenever there is a mental dis-

---

4. In such circumstances, several courts have allowed tolling despite the general rule against tolling for mental disability. *See Clifford v. United States,* 738 F.2d 977, 980 (8th Cir.1984) (tolling statute where alleged malpractice caused coma); *Zeidler v. United States,* 601 F.2d 527, 531 (10th Cir.1979) (similar); *Dundon v. United States,* 559 F.Supp. 469, 474–75 (E.D.N.Y.1983) (similar); *cf. Leite v. Kennecott Copper Corp.,* 558 F.Supp. 1170, 1172 (D.Mass.) (distinguishing

equitable estoppel, which arises when defendant's acts caused plaintiff's delay in filing suit, from ordinary equitable tolling), *aff'd,* 720 F.2d 658 (1st Cir.1983). In each of these cases, however, the mental problems in turn prevented the plaintiff from bringing suit. If the Court finds that the plaintiff was capable of pursuing his claim during the relevant time period; these cases would not benefit him.

ability. The federal courts "have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods." *Earnhardt v. Com. of Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982); *see Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (" 'Strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " (*quoting Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980))). Indeed, a long line of federal cases explicitly holds that mental disability, even rising to the level of insanity, simply does not toll a federal statute of limitations. *See Accardi v. United States,* 435 F.2d 1239, 1241 n. 2 (3d Cir.1970); *O'Hara v. Kovens,* 473 F.Supp. 1161, 1167 (D.Md.1979); *Jackson v. United States,* 234 F.Supp. 586, 587 (E.D.S.C.1964); *cf. Casias v. United States,* 532 F.2d 1339, 1342 (10th Cir.1976) (holding that insanity does not toll the statute of limitations under the Federal Tort Claims Act); *Williams v. United States,* 228 F.2d 129, 132 (4th Cir.1955) (same regarding Suits in Admiralty Act).

This is especially true when claims against the federal government are involved, since considerations of sovereign immunity argue for particular stringency. *See Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."); *Swietlik v. United States,* 779 F.2d 1306, 1311 (7th Cir.1985) ("The grounds for tolling statutes of limitations are more limited in suits against the government than in ordinary private litigation."); *Kreiger v. United States,* 539 F.2d 317, 320–21 (3d Cir. 1976) (similar); *Carter v. Heckler,* 588 F.Supp. 87, 90 (N.D.Ill.1984) (similar); *Bassett v. Sterling Drug, Inc.,* 578 F.Supp. 1244, 1246–47 (S.D.Ohio 1984) (similar), *appeal dismissed,* 770 F.2d 165 (6th Cir.1985).

■ Although there is a long line of common law authority finding insanity a ground

for tolling a limitations period,[5] the cases, taken together with the Supreme Court's admonition in *Baldwin County Welcome Center v. Brown* against broadening equitable tolling in Title VII cases, 466 U.S. at 151–52, 104 S.Ct. at 1725–26, counsel against an absolute rule of tolling on insanity grounds. Rather, a case-specific analysis is required.

In *Lopez v. Citibank, N.A.,* 808 F.2d 905 (1st Cir.1987), the First Circuit recognized that mental incapacity could operate to toll the filing period but refused to adopt an absolute rule of tolling on such grounds. In *Lopez,* the plaintiff was suffering from mental illness during the filing period but was represented by counsel during this period. The court held that, while mental incapacity could operate to toll the statute of limitations in certain circumstances, tolling was not warranted by the facts in the case. "In sum, assuming for the sake of argument that mental incompetence might sometimes toll the statute of limitations, we find that it cannot do so where a plaintiff has presented no strong reason why, despite the assistance of counsel, he was unable to bring suit." *Lopez,* 808 F.2d at 907.

In *Bassett v. Sterling Drug, Inc.,* 578 F.Supp. 1244 (S.D.Ohio 1984), *appeal dismissed,* 770 F.2d 165 (6th Cir.1985), the Southern District of Ohio adopted an even narrower rule concerning the tolling of a statute of limitations in an ADEA claim on the grounds of mental incapacity. The court recognized that such an exception would be ripe for abuse and, therefore, adopted a wholly objective standard for determining mental disability. In order to toll the statute of limitations, the court held that the plaintiff must be adjudicated to be mentally incompetent by a court of competent jurisdiction or be institutionalized during the filing period under a diagnosed condition or disability which rendered him of unsound mind. The court reserved the right to deny tolling even where the plaintiff had been institutionalized in order to guard against abuse. *Id.* at 1248.

In *Barnell v. Paine Webber Jackson & Curtis, Inc.,* 614 F.Supp. 373 (S.D.N.Y.1985),

---

5. *See* "Developments in the Law—Statutes of Limitations," 63 Harv.L.Rev. 1177, 1229 (1950) ("Since the English act of 1623, statutes of limitations generally have excepted from their operation plaintiffs who are subject to ... insanity....")

the District Court for the Southern District of New York also recognized that a mental disability might toll application of the statute of limitations in a Title VII suit. The court did not decide the ultimate issue in that opinion but found that a genuine issue of material fact remained regarding the plaintiff's mental capacity during the filing period. *Id.* at 377.

The doctrine of equitable tolling allows "a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990). Unlike the discovery rule, the doctrine of equitable tolling assumes that the plaintiff knows that he has been injured, and thus the statute of limitations is deemed to have begun to run.

However, the statute of limitations is equitably tolled when the plaintiff "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.* Mere allegations of a disability do not automatically guarantee a tolling of the charge-filing period. *See Lopez v. Citibank*, 808 F.2d 905, 906–07 (1st Cir.1987). For the Title VII filing period to be equitably tolled, the plaintiff must plead and prove that (1) his physical or mental condition prevented him from filing during the specified period and (2) this condition existed for the majority of the filing period. *See Dallmann v. Saturn of Chicago*, No. 95 C 395, 1996 WL 41240, *2 (N.D.Ill.1996) (Williams, J.) (*citing Cada*, 920 F.2d at 446, 451, 453).

With respect to the first element, a court permits tolling only where the plaintiff is unable to obtain vital information because a mental or physical condition affected his legal competency. A plaintiff's mental incapacity could be sufficient to toll the filing period, but only if the plaintiff was "entirely incapable of bringing legal action" or discovering the vital information for the claim. *Barnhart v. United States*, 884 F.2d 295, 300 (7th Cir.1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). "However, where the disability at most erodes or impairs a plaintiff's desire to proceed with a recognized cause of action," equitable tolling does not apply. *Id.*

The second element of the equitable tolling doctrine requires the plaintiff to show that he was incapable of filing with the EEOC for the majority of the filing period. *Cada*, 920 F.2d at 452–53. In *Cada*, the court held that equitable tolling was improper because the plaintiff had discovered his claim eight months before the filing deadline. *Id.*

The plaintiff must be able to prove not only that he was mentally impaired, but that his condition prevented him from filing during the statutory period. The plaintiff's allegations cannot be read in a vacuum. In *Miller v. Runyon*, 77 F.3d 189, 192 (7th Cir.1996), the Seventh Circuit noted that if the plaintiff "could attend Chicago State University for two semesters, he could complain to an equal employment opportunity counselor." The court also stated that "mental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Id.* at 191. The statute of limitations is tolled only until the plaintiff is able through the exercise of proper diligence to file suit. *Id.; see also Cada*, 920 F.2d at 453 (noting that when plaintiff is able to gather necessary information after the claim arose, but before statute of limitations has run, presumption is that plaintiff is able to bring suit within the statutory period).

*Equitable Estoppel*

The plaintiff, by arguing that he and/or his wife were misled by someone at the EEO office, raises the issue of equitable estoppel. Under the doctrine of equitable estoppel, a defendant is estopped from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 879 (5th Cir.1991) (stating that "[i]f the defendant did conceal facts or mislead the plaintiff and thereby caused the plaintiff not to assert his rights within the limitations period, the defendant is estopped from asserting [limitations] as a defense."), *cert. denied*, 502 U.S.

868, 112 S.Ct. 198, 116 L.Ed.2d 158. *Cf. Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (noting that the Supreme Court has allowed equitable tolling "in situations where the claimant has been induced or tricked by his adversary's conduct into allowing the filing deadline to pass.").

Several courts, including the Supreme Court in *Irwin,* have used the terms "equitable tolling" and "equitable estoppel" interchangeably. The Fifth Circuit, however, has joined several others in distinguishing between the two doctrines. In *Rhodes,* the Fifth Circuit explained this distinction by noting that equitable tolling focuses on the plaintiff's excusable ignorance of the facts underlying the suit, while equitable estoppel focuses on the defendant's misrepresentation of concealment of the facts underlying the suit. 927 F.2d at 879.

*Necessity for an Evidentiary Hearing*

After careful consideration of the parties' briefs, and all of the evidence submitted by both sides, the Court is of the opinion that an evidentiary hearing is needed. *See Thornton v. South Cen. Bell Tel. Co.,* 906 F.Supp. 1110, 1118 (S.D.Miss.1995) (Title VII case in which equitable tolling was issue; the court, after studying summary judgment materials, felt that it needed more, especially the in-court testimony of the plaintiff, her husband and her physician); *Clark v. Tarrant County,* 798 F.2d 736 (5th Cir.1986) (in sex discrimination case, two-day evidentiary hearing held to determine, *inter alia,* whether the county was an employer under the state statute); *Cupit v. Jones,* 835 F.2d 82 (5th Cir.1987) (in § 1983 civil rights action, an evidentiary hearing was held to supplement the affidavits and exhibits pursuant to a summary judgment motion); *Neely v. City of Grenada,* 799 F.2d 203, 208 n. 5 (5th Cir.1986) (evidentiary hearing was held to determine whether city

was complying with its affirmative action plan).

However, even though this Court has previously found that it is "conceivable that mental incapacity may toll the statute of limitations in an employment discrimination action," *Thornton,* 906 F.Supp. at 1118,[6] the Court is unable to find any reported decisions within the Fifth Circuit in which a district court has adopted the concept of tolling the filing deadline for a discrimination complaint on the basis of mental disability and found that such a disability actually justified tolling.

In *Thornton,* after reviewing the summary judgment evidence including that presented at the evidentiary hearing, the Court found that the plaintiff failed to prove that mental incapacity prevented her from retaining an attorney to handle her claim within the limitations period. Although the plaintiff had undergone two lengthy psychiatric hospitalizations and been diagnosed as totally disabled from working due to depression, she was at all times capable of describing to her attorney the racial discrimination she had allegedly suffered. *Id.* at 1118–19; *see also Quina v. Owens–Corning Fiberglas Corp.,* 575 F.2d 1115, 1118 (5th Cir.1978) (allegation that "emotional and mental shock" caused by defendant's actions so affected plaintiff physically and mentally that he was unaware of his rights was insufficient to justify equitable tolling and defeat motion to dismiss); *Kerver v. Exxon Prod. Research Co.,* No. H–85–1525, 1986 WL 8872 (S.D.Tex. May 15, 1986) (summary judgment granted for defendants because plaintiff had not been hospitalized for mental incapacity or adjudicated incompetent, and letters from his psychologist and plaintiff's own deposition testimony demonstrated that he was capable of handling his affairs and was functioning at a high level despite depression over losing his job), *aff'd,* 810 F.2d 196 (5th Cir.1987).

---

6. *See also Arizmendi v. Lawson,* 914 F.Supp. 1157, 1162 (E.D.Pa.1996) ("Some courts have recognized mental illness as a ground for equitable tolling, although only in rather extreme circumstances."); *Nunnally v. MacCausland,* 996 F.2d 1, 6 (1st Cir.1993) (tolling appropriate only if plaintiff's proof meets "rigorous standards;" Rehabilitation Act limitations period may be tolled for diagnosed schizophrenic plaintiff if her mental condition "disordered her ability to reason and function" and rendered her incapable of pursuing her claim); *Decrosta v. Runyon,* 1993 WL 117583, *2–3 (N.D.N.Y. Apr.14, 1993) (time limit not tolled for handicap discrimination plaintiff with major depressive disorder when condition did not impede plaintiff's ability to think rationally and to function).

Similar holdings from other circuits rejecting requests for tolling based on mental incapacity are found in *Decrosta v. Runyon,* Nos. 90–CV–1269 and 90–CV–585, 1993 WL 117583, *3 (N.D.N.Y. April 14, 1993) (where the plaintiff "could comprehend problems in his employment;" could meet with his attorney to "discuss his concerns and provide information;" the plaintiff demonstrated an "awareness of and conscious deliberation about his legal remedies;" and was critical of his attorney and asked his physician to speak with his attorney); *Char v. Matson Terminals, Inc.,* 817 F.Supp. 850 (D.Hawai'i 1992); *Saccardo v. United States Postal Service,* No. 87–2298–7, 1989 WL 119174, (D.Mass. 1989) (where family members were aware of a plaintiff's legal rights and took steps to enforce those rights); *Speiser v. U.S. Dep't of Health and Human Serv.,* 670 F.Supp. 380 (D.D.C.1986) (where plaintiff could only show that her mental illness resulted in "impaired judgment" and did not show that it caused her to be "unable to comprehend her legal rights"); and *Moody v. Bayliner Marine Corp.,* 664 F.Supp. 232 (E.D.N.C.1987) (where the plaintiff had retained counsel before the expiration of the relevant filing period).

Thus, the Court does not here conclude that it is possible for mental incapacity to toll the statute in this case, but will await the conclusion of the hearing to determine if there is sufficient evidence to reach the issue. The Court is mindful of the stringency required in claims against the federal government. *See Soriano v. United States* and discussion at p. 947 herein.

The Court is aware of the inadequacy of much of the plaintiff's proffered summary judgment evidence. He has failed to present medical records or affidavits from his doctors. *See, e.g., Davidson v. Scully,* 83 Civ. 2025, 1994 WL 669549, *20 n. 19 (S.D.N.Y. Nov.30, 1994) (rejecting defendants' proffer of unsworn letter of physician related to plaintiff's medical condition in context of motion for summary judgment). The statements of the doctors are for the most part conclusory. *See Richardson v. Oldham,* 12 F.3d 1373, 1378–79 (5th Cir.1994) (affidavits in opposition to summary judgment that contain conclusions, conjecture not based on personal knowledge and insufficient factual specificity are not competent summary judgment evidence); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) (unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat motion for summary judgment); *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985), (affidavit that is essentially conclusory and lacking in specific facts is inadequate).

Further, a diagnosis of being disabled from holding a permanent job does not necessarily lead to the conclusion that the plaintiff was incapable of contacting an attorney or the EEOC, or of having his wife make the initial contact for him. Nevertheless, the Court finds enough in the depositions of the plaintiff and his wife to warrant an evidentiary hearing, especially in light of the allegations of affirmative misconduct by the government; the Court further finds that the doctors should be subject to cross-examination in the form of depositions or at the hearing.

At the hearing, both sides will be allowed to call witnesses. The court's only limitation is that all testimony be restricted to the issues at hand, *i.e.* equitable tolling and equitable estoppel. Testimony from the plaintiff and his wife is essential. As for the physicians, the Court notes that in *Moody v. Bayliner Marine Corp.,* 664 F.Supp. 232 (E.D.N.C.1987), the court allowed the defendant's unopposed motion to depose the plaintiff's doctor in order to discover the basis of the opinions expressed in his affidavit. The parties shall contact the Court's Courtroom Deputy in order to schedule a hearing during the February term of court, and inform the Court if any depositions will be submitted. Accordingly,

IT IS HEREBY ORDERED that an evidentiary hearing on the defendant Togo D. West, Jr., Secretary of the Army's motion for summary judgment be set during the Court's February calendar.

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant, Togo D. West, Jr., Secretary of

the Army's motion for summary judgment. By order of January 29, 1997, this Court entered an opinion and order directing that an evidentiary hearing be held. This hearing was held in Vicksburg, Mississippi, on February 19, 1997. In lieu of having two separate opinions, the Court will incorporate herein the language of its earlier opinion attached hereto as an exhibit and which earlier opinion will be supplemented by findings from the February 19, 1997, evidentiary hearing, as follows:

## SUPPLEMENTAL FINDINGS

At the evidentiary hearing on the 19th day of February, 1997, Plaintiff called as witnesses Percy Carl Wilson, Phyllis Wilson, Harry Brown, adversely, and Dr. Wesley Pitts. The defendant, movant herein, called as its witness Eunice Polk and tendered two other witnesses in the event the Court should need additional evidence. A proffer was made regarding their testimony.

 Based upon all of the evidence, including memoranda of the parties, oral argument and the testimony of the witnesses, as well as briefs previously considered, the Court finds that the evidence is wholly insufficient to support the tolling of the statute of limitations in this case for the reason that there has been a failure on the part of the plaintiff to show either excusable ignorance in support of his theory of equitable tolling, or misrepresentation in support of equitable estoppel. Although there were allegations by the plaintiff of affirmative misconduct on the part of the defendant, there is no evidence to support such a charge.

Specifically, plaintiff testified that during his employment with the defendant and prior to his retirement he was fully aware that he had a right to file an EEO complaint. He had done so in 1983. In support of his charge that he was misled by the defendant, the Plaintiff stated that he was never told that there was a limitation of time during which such a contact could be made or a complaint filed. But there is no evidence of any affirmative action on behalf of the defendant or any of its representatives involving misleading statements which could conceivably lure the plaintiff to draw inaccurate conclusions regarding the necessity of a timely initiation of the process. Plaintiff stated that he was unaware of a deadline, but his testimony in this regard is disingenuous for the reason that in 1983 he was dilatory by several days (see the testimony of Harry Brown), but was given a brief extension and was allowed to proceed with his complaint. The delay involved in the case *sub judice* is a matter of months and not days. Moreover, the Plaintiff stated that he had contacted his union representative before leaving the Corps of Engineers and relied upon the union to file and complete the paperwork. This assertion is wholly unsupported and uncorroborated and is contradictory to plaintiffs subsequent statement that his wife, Phyllis Wilson, was in charge of filing with the EEOC. Most importantly, the plaintiff concedes that Harry Brown, an EEO officer working with the Corps of Engineers, advised Mr. Wilson that he had a right to file a complaint, but Mr. Wilson failed to do so until September, 1993.

Both Harry Brown and Eunice Polk, officer and counselor, respectively, with EEO testified that any discrimination complaint would be logged and noted in the office records. Mr. Brown advised Mr. Wilson of his right to file a complaint. Ms. Polk discussed the matter with the plaintiff, as well. Both testified that the plaintiffs verbal complaints to them were based primarily upon the failure of his employer to promote according to his self assessment. Both testified that the plaintiff made no discrimination charge or preliminary complaint during the 45 day period following his retirement, nor at any other time within 45 days of an incident and, moreover, nothing was done by the plaintiff until the September 1993 filing.

At the suggestion of the Court, Dr. Wesley Pitts, Chief of Psychiatry of the VA Hospital, Jackson, Mississippi, testified. While Dr. Pitts admitted that the plaintiffs ability to carry on his business affairs was impaired during his periods of hospitalization, there is no showing of incompetency during hospitalization (See Mem. Op. and Order, p. 9). There is no credible evidence that plaintiff was incompetent or substantially impaired after he returned home. As

stated earlier (See Mem. Op. and Order, p. 10), the plaintiff, both during his hospitalization and subsequent to his release, completed forms relating to his insurance, his disability/retirement, retirement/annuity and his workmen's compensation claim (See Mem. Op. And Order, p. 10). The hospital records from the Department of Veterans Affairs indicate that the plaintiff suffered major depression with mood swings, but was alert and well oriented. Upon hospital admission, his speech was coherent, without looseness of association or flight of ideas (See Exhibit D-1). On his discharge from the April 1993 hospitalization (approximately 21 days), and his rehospitalization on June 23, 1993, and upon his discharge on July 2, 1993, the records indicate, as follows: "He is considered competent to handle his finances, but he is not considered employable."

Plaintiffs precomplaint was submitted on September 20, 1993, to Eunice Polk, and a formal complaint of discrimination was filed October 19, 1993. Both alleged that the date of the most recent acts of discrimination occurred on or about April 1993. Inasmuch as the plaintiff, after having been given the benefit of an evidentiary hearing, has been unable to produce evidence which would justify either equitable tolling, equitable estoppel or other relief, he has failed to meet his Rule 56 burden (See Mem. Op. And Order, pp. 4-5), and the defendant's motion for summary judgment is well-taken. Accordingly,

IT IS HEREBY ORDERED that the defendant, Togo D. West, Jr., Secretary of the Army's motion for summary judgment is GRANTED. A separate Final Judgment shall be entered of even date herewith.