James E. HARTNETT, Plaintiff,

v.

**CHASE BANK OF TEXAS NATIONAL ASSOCIATION and the Chase Manhattan Corporation, Defendants.**

No. Civ.A. 3:98–CV–1061–L.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 10, 1999.

Robert E. Goodman, Jr., Dallas, Texas, for plaintiff, James E. Hartnett.

Teresa Valderrama, Mark Gregory Artlip, Baker & Botts, L.L.P., Houston, Texas, Karen Peck, Baker & Botts, L.L.P., Dallas, Texas, for defendants, Chase Bank of Texas National Association and Chase Manhattan Corp.

## MEMORANDUM OPINION AND ORDER

LINSAY, District Judge.

Before the court is Defendants' Motion for Summary Judgment, filed October 1, 1998. Upon careful consideration of the motion, response, reply, record evidence, and applicable law, the court, for the reasons that follow, **grants** Defendants' Motion for Summary Judgment.

### I. *Factual and Procedural Background*

Plaintiff James Hartnett began his career with one of Defendants'[1] predecessor banks in 1972.[2] This bank eventually be-

---

[1] Defendants Chase Bank of Texas National Association and the Chase Manhattan Corporation are collectively referred to herein as "Defendants". At the time of his retirement, Plaintiff was employed by Texas Commerce Bank National Association ("TCB"). TCB's parent company, Chemical Bank, was later acquired by Chase Manhattan Corporation ("Chase–Manhattan"), and TCB was renamed Chase Bank of Texas ("Chase–Texas"). Plaintiff sues Chase–Texas as successor to TCB on his claim of age discrimination. With regard to his retaliation claims, Plaintiff sues both Chase–Texas and Chase–Manhattan.

[2] The majority of the facts stated herein have been presented by the parties as undisputed or are taken from Plaintiff's testimony. Wherever the facts presented herein are in dispute, they are immaterial, or even when taken as true, do not raise a fact issue which would preclude judgment as a matter of law for Defendants.

came Texas Commerce Bank ("TCB"). Up until 1990, Plaintiff served as a consumer loan officer, which entailed taking loan applications, reviewing them, and processing the applications by reviewing credit reports. According to Howard Pinion, one of Plaintiff's supervisors, Plaintiff received high marks for his performance in the consumer loan officer position.

In January 1990 Plaintiff was transferred from consumer loans into a newly-established community and professional banking group. Plaintiff's new job as a Professional and Community Banker involved commercial lending. At that time, Plaintiff expressed a need for additional training in commercial lending. During 1990, Plaintiff attended training in loan policy, loan documentation, cash flow, Small Business Association lending, BDS,[3] and security. Plaintiff's supervisor may have enrolled Plaintiff in additional training courses that Plaintiff considered to be over his head. Plaintiff also completed an eight to twelve week night course in commercial lending during the Fall of 1991, which was paid for by TCB. During this time, TCB also had a commercial loan officer training program. The community and professional banking position was a new and unprecedented position at TCB. Professional and Community bankers such as Plaintiff did not participate in the commercial loan officer training program. Although Plaintiff wanted to go through the commercial credit training program at TCB, TCB did not put him through the program.

After Plaintiff assumed his new position as a Professional and Community Banker, he was assigned a commercial loan portfolio for servicing. Plaintiff was admittedly overwhelmed by his new responsibilities in commercial lending, and began receiving poor performance reviews. The poor reviews began in November 1990 and continued until Plaintiff's retirement from TCB in June 1992. Plaintiff agrees that his job performance was lacking during this time period. Plaintiff had difficulty understanding commercial lending, and expressed his stress and frustration to his supervisors.

On December 9, 1991 Plaintiff was informed that because of his poor performance, it would be best if he devoted his time to finding employment elsewhere, with the assistance of an outplacement firm. Plaintiff was told that he needed to find a new job by January 30, 1992. On December 19, 1991 Plaintiff had a meeting with John Adams ("Adams"), the Chief Executive Officer of TCB's Dallas office, wherein Adams expressed his concern for Plaintiff's health and well being. At a subsequent meeting, Adams asked Plaintiff to think about the areas of TCB for which he would be best suited.

In April 1992, Plaintiff was offered three employment options with TCB. He was offered a sales representative/new account position that required basically the same duties Plaintiff performed prior to his January 1990 transfer to the commercial division, assignment to TCB's credit department for additional commercial loan training and then reassignment back to the commercial division and resumption of his Professional and Community Banking role, or participation in an early retirement program, including continued outplacement services. Plaintiff opted to take the credit department training, and a memorandum describing the training was finalized on April 14, 1992.

The initial portion of the training program required Plaintiff to read and absorb materials regarding commercial lending. Next, Plaintiff would have assumed an active analyzing and support role within the training program. Plaintiff experienced difficulty in completing his initial reading tasks, and thus was unable to progress through the program at an acceptable

**3.** Although the term "BDS" is not defined in the record, the parties agree that Plaintiff received such training, and the meaning of the term does not impact the court's analysis of Defendants' summary judgment motion.

pace. In mid to late May 1992, Plaintiff informed Adams that he had decided to take the early retirement program.

In connection with the early retirement program, Plaintiff read and signed an election form and release on June 1, 1992. Plaintiff had 45 days to consider and ten days to revoke his decision to take early retirement. The effective date of Plaintiff's retirement from TCB was June 30, 1992. Plaintiff was 52 years old when he retired.

In January 1994 Plaintiff began contacting Defendants regarding his former employment. On the advice of his attorney, Plaintiff filed a discrimination charge with the EEOC on May 17, 1994 (the "Age Discrimination Charge"). On June 17, 1994, the EEOC terminated its investigation of Plaintiff's age discrimination charge because it determined that he had signed a release in compliance with federal law. Plaintiff continued to contact various of Defendants' representatives regarding his past employment. This included calls to and a meeting with Chemical Bank human resources representative Claude Weir ("Weir") in August 1994, and a follow-up letter from Weir to Plaintiff in September 1994. After his contacts with Weir, Plaintiff continued to make inquiry of Defendants. On January 19, 1995, Meryl Kaynard of Chemical Bank ("Kaynard") wrote to Plaintiff and instructed him to direct any further questions to her, Weir, or Chemical Bank's outside counsel.

On January 27, 1995, Plaintiff arrived at Chemical Bank's offices in New York and requested a meeting with Chief Executive Officer Walter Shipley ("Shipley"). Plaintiff did not meet with Shipley but visited with Weir and Kaynard regarding his concerns. Plaintiff contacted Kaynard again in February 1995, and she called him back and talked to him on or about March 3, 1995. Kaynard sent Plaintiff a follow-up letter on March 13, 1995, again reiterating

that Plaintiff should direct inquiries regarding his employment or retirement to her, Weir, or Chemical Bank's outside counsel. Despite Kaynard's request, Plaintiff wrote to Shipley and Chemical Bank's Board of Directors on April 22, 1995.

On May 16, 1995, Plaintiff was not admitted to a Chemical Bank shareholders' meeting despite having a ticket for admission. Instead, he discussed issues related to his former employment with Defendants' representatives in a private setting. On June 15, 1995, Plaintiff arrived at TCB's Dallas offices and requested a meeting with Adams. He was told Adams was not available and that any response Defendants had would come from Chemical Bank's legal department.

On December 29, 1995, Plaintiff went to TCB's downtown Dallas bank to pick up forms for a health insurance election he wished to exercise. Initially, TCB's Human Resources Director Lucy Neary ("Neary") informed Plaintiff that he was not eligible for the program and directed him to contact Kaynard at Chemical Bank regarding any questions he had. Plaintiff persisted, and within 10–15 minutes someone else in Human Resources confirmed that Neary was incorrect, that Plaintiff was correct, that he was eligible for the health benefits program, and delivered the forms to him.

Plaintiff's contacts with Defendants continued. On March 6, 1996, Plaintiff again went to Adams' office at TCB's Dallas headquarters and asked to speak to Adams' secretary, Kathryn Laughlin ("Laughlin"). Plaintiff paid this visit to TCB "to see what their reaction is."[4] Laughlin was not in, but Plaintiff left a message for her. A few days later Kaynard returned Plaintiff's call, reminded him again that she was responsible for responding to any inquiries he had for

---

4. Defendants' Appendix to Motion for Summary Judgment and Brief in Support Thereof ("Defendants' App.") at pp. 62–63.

Defendants, and asked if there was anything she could do for him. Plaintiff responded that he did not think so.

In July or August 1995, Plaintiff contacted the Dallas office of the EEOC to inquire about filing a charge based on the Bank's conduct from March 3, 1995 to that point. No one at the EEOC suggested that it would be appropriate to file a charge, and Plaintiff was given no other advice at that point. After receiving advice from the Texas Attorney General's office, Plaintiff filed a charge with the Texas Commission on Human Rights ("TCHR") on March 23, 1996, alleging that the above-described incidents of March 3, 1995, May 16, 1995, June 15, 1995, December 29, 1995, and March 6, 1996 constituted retaliation for his previously dismissed May 1994 EEOC charge. On or about October 11, 1996, Plaintiff received a notice of right to sue from the TCHR, giving him 60 days to file suit. Plaintiff then asked that the EEOC review the TCHR's finding of no discrimination. Plaintiff received his right to sue letter from the EEOC on December 7, 1996.

Plaintiff filed a lawsuit against TCB, Chase–Manhattan and the EEOC on March 7, 1997 (the "1997 Suit"). The 1997 Suit was dismissed by the district court on the grounds that Plaintiff could not pursue his claims against the EEOC and that Plaintiff's pleadings had failed to assert a federal cause of action against TCB or Chase–Manhattan.[5] Judge Sanders' opinion dismissing the 1997 Suit was upheld by the Fifth Circuit on appeal. Plaintiff filed the instant suit on March 23, 1998, bringing claims for age discrimination and retaliation in violation of the ADEA, as well as several tort claims arising under Texas law.[6]

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise man-

---

5. *See* Defendants' App. at pp. 217–19, Memorandum Opinion and Order signed by the Honorable Barefoot Sanders on August 23, 1997.

6. Defendants filed a motion for partial judgment on the pleadings on August 12, 1998, arguing that Plaintiffs tort claims were barred by limitations, and that his claim for false

light invasion of privacy was not recognized by Texas law. Plaintiff conceded that this claim was not viable under Texas law, and that his other tort claims were barred by limitations. These claims were eliminated when Plaintiff filed his Amended Complaint. *See* Order signed July 21, 1999.

ner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id., Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Defendants' Motion for Summary Judgment*

Defendants contend they are entitled to summary judgment on all of Plaintiff's claims, and advance multiple arguments in support of summary judgment. Specifically, Defendants claim that Plaintiff's claims are time-barred, that the release Plaintiff executed upon his retirement forecloses his right to sue for age discrimination, that Plaintiff has failed to exhaust his administrative remedies with respect to certain claims, that Defendants' alleged acts of retaliation do not constitute "ultimate employment actions" within the purview of the ADEA, and that Plaintiff is unable to present evidence raising a fact issue whether Defendants constructively discharged him due to his age, or retaliated against him for filing a charge of discrimination.

7. Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's App.") at

## A. *Timeliness of Plaintiff's Suit*

### 1. *Age Discrimination Claims*

■ Plaintiff has alleged that TCB (now Chase–Texas) discriminated against him on account of his age by failing to train him for the Professional and Community Banking position and by constructively discharging him on June 30, 1992, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* The statute of limitations for an age discrimination claim under the ADEA is 90 days following receipt of a notice that a charge filed with the EEOC has been terminated or dismissed. *St. Louis v. Texas Worker's Compensation Commission,* 65 F.3d 43, 47 (5th Cir.1995); *Weaver v. Ault Corp.,* 859 F.Supp. 256, 258 (N.D.Tex. 1993). Age discrimination claimants must file suit within this 90–day window or lose their right to do so. *St. Louis,* 65 F.3d at 47, *citing McCray v. Corry Mfg. Co.,* 872 F.Supp. 209, 215 (W.D.Pa.1994), *aff'd,* 61 F.3d 224 (3d Cir.1995).

■ On June 17, 1994, Plaintiff received a notice from the EEOC that it was dismissing the Age Discrimination Charge. In response to the notice, Plaintiff contacted the EEOC to inquire about the dismissal. The EEOC responded to Plaintiff on June 20, 1994 and again stated that "no further action" would be taken on Plaintiff's charge. Plaintiff did not file this lawsuit until March 23, 1998. Thus, Defendants contend that Plaintiff's age discrimination claims are barred by the ADEA's 90–day statute of limitations.

Plaintiff points to the EEOC's June 17 1994 letter to him in support of his argument that his age claims are not barred by limitations. That letter states "[y]ou may file suit under the ADEA upon the expiration of 60 days from the filing of your charge. The ADEA provides for a two-year statute of limitations on the recovery of back wages (three years, where the violation is willful)."[7] The letter concludes

Tab 1, Exh. 31.

that "[t]he applicable statute of limitations in any particular case is determined by the courts." Plaintiff asserts that this letter gave him three years to file suit, that under this rule his 1997 Suit alleging age discrimination was timely, that the dismissal of the 1997 Suit was clear error, and that this case should be tacked onto the 1997 suit for limitations purposes for that reason, because it was filed within four days of the Fifth Circuit's order affirming the district court's dismissal of that case.

The court disagrees with Plaintiff for two reasons. First, Plaintiff ignores the clear mandate of the Fifth Circuit that the statute of limitations for an age discrimination claim under the ADEA is 90 days following receipt of a notice that a charge filed with the EEOC has been terminated or dismissed. *St. Louis*, 65 F.3d at 47. Before the enactment of the Civil Rights Act of 1991 ("1991 Act"), the statute of limitations applicable to ADEA claims was two years from the date the allegedly discriminatory act took place, or three years where the violation was willful. *Id.* at 45. When Congress passed the 1991 Act, it amended the statute of limitations for ADEA cases. *Id.* The new statute of limitations reads:

> If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of receipt of such notice.

29 U.S.C. § 626(e). The effective date of this amendment was November 21, 1991.

In cases such as this one, where some of the alleged discriminatory acts took place before the 90-day statute of limitations became effective, but the Plaintiff's lawsuit has been filed after the new statute of limitations was enacted, the question arises whether the new or old limitations period applies. The Fifth Circuit considered this question in the *St. Louis* case and determined that the 90-day statute of limitations in § 626(e) applies to all claims filed after the 1991 Act became effective. *Id.* at 46. Plaintiff was notified by the EEOC in June 1994 that it had terminated its investigation of his age claims; therefore, he had 90 days to file suit following receipt of the letter. Under the applicable limitations period, Plaintiff's age discrimination claims brought in both the 1997 Suit and this lawsuit are untimely.

Second, Plaintiff has attempted to, but cannot, argue that the two-year/three-year statute of limitations mentioned in the letter from the EEOC would give him up to three years to file suit upon receipt of the letter, as this limitations period runs from the date of the alleged wrongful act, not the date that a right to sue letter is issued.[8] *St. Louis*, 65 F.3d at 45. Even using this calculation (although it is legally incorrect), the limitations period on Plaintiff's age discrimination claims would have run, at the latest, on June 30, 1995, three years after he left his employment. Plaintiff's age discrimination claims are time-barred, and Defendants are entitled to judgment as a matter of law on these claims.

### 2. *Retaliation Claims*

■ Defendants also contend that Plaintiff's retaliation claims are barred by limitations. Plaintiff first filed his retaliation charge with the TCHR on March 23, 1996 (the "Retaliation Charge"). In the Retaliation Charge, Plaintiff alleged that Defen-

---

8. While it appears that the EEOC erroneously stated the limitations period in its June 17, 1994 letter (although the Fifth Circuit did not settle the issue in the *St. Louis* case until 1995), the EEOC is not responsible for pro-viding Plaintiff with accurate legal advice. Plaintiff forwarded this letter to his attorney, who should have advised him of the correct limitations period.

dants retaliated against him for filing the Age Discrimination charge, in violation of the Texas Commission on Human Rights Act and Title VII. On or about October 11, 1996, Plaintiff received a notice of right to sue from the TCHR, giving him 60 days to file suit. Plaintiff then asked that the EEOC review the TCHR's finding of no discrimination. Plaintiff received his right to sue letter from the EEOC on December 7, 1996. Therefore, Plaintiff had 90 days from December 7, 1996 to file suit upon his retaliation claims. *See Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir.1998) (affirming dismissal of Title VII suit filed more than 90 days following termination of agency investigation); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996) (suit must be filed within 90 days of receipt of "right to sue" letter) For this reason, Defendants maintain that Plaintiff's retaliation claims are untimely because he did not file this case until March 23, 1998.

Plaintiff responds that the right to sue letter he got in response to his Retaliation Charge only gave him the right to sue under Title VII, not the ADEA.[9] Plaintiff correctly states that the letter references Title VII rather than the ADEA; however, this can only have resulted from Plaintiff's reliance on Title VII, not the ADEA, in filing his charge. It is undisputed, however, that the conduct complained of in Plaintiff's Retaliation Charge is the same conduct he now sues upon under the ADEA; therefore, the court will assume that the December 7, 1996 right to sue letter granted him the right to bring suit for Defendants' alleged acts of retaliation. Waiting

until March 23, 1998 to file this case makes these claims untimely.

Plaintiff next argues that because the 1997 Suit was filed within 90 days of the December 7, 1996 right to sue letter, this case should be tacked onto the 1997 Suit for limitations purposes because the district court's decision dismissing the 1997 Suit, and the Fifth Circuit's decision affirming the district court's dismissal of that case were "plain error."[10] Plaintiff offers no legal support for this contention, and the court disagrees that these circumstances would permit treatment of the two court cases as one for limitations purposes.

Finally, Plaintiff argues that his ADEA retaliation claims are timely because they were filed within three years of filing his Retaliation Charge, and that the EEOC led him to believe the limitations period was three years. As the court has explained above, the three year limitations period does not apply to cases filed after November 21, 1991. *St. Louis*, 65 F.3d at 46. Furthermore, the December 7, 1996 right to sue letter clearly states that "if you decide to sue, you must sue *WITHIN 90 DAYS* from your receipt of this Notice; otherwise, *your right* to sue is lost."[11] (Emphasis in original). Plaintiff was clearly informed of the applicable limitations period in the December 7, 1996 letter from the EEOC; indeed, he complied with this limitations period by filing his 1997 Suit within that period. This suit, filed on March 23, 1998, is plainly outside the limitations period applicable to his retaliation claims; therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.[12]

---

9. This argument is tantamount to an admission that Plaintiff never filed a retaliation charge pursuant to the ADEA, ostensibly leading to the conclusion that Plaintiff has failed to exhaust his administrative remedies on his retaliation claim. The court gives Plaintiff the benefit of the doubt and assumes that he intended to file the Retaliation Charge under the ADEA, which would be consistent with his claims in this lawsuit.

10. Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment ("Plaintiff's Brief") at p. 2.

11. Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's App.") at Tab 1, Exh. 29.

12. Plaintiff concedes that his claim for retaliation in violation of the Texas Labor Code is untimely. *See* Tex.Lab.Code § 21.254. There-

**B. Timeliness of Plaintiff's Age Discrimination Charge**

A civil action under the ADEA cannot be filed unless a charge of discrimination was filed within 300 days of the alleged unlawful act or practice. *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1223 (5th Cir.1995); *Anson v. University of Texas Health Science Center,* 962 F.2d 539, 540 (5th Cir.1992). The basis for Plaintiff's age discrimination claims in this case are denial of training and constructive discharge. Plaintiff left TCB on June 30, 1992, so this is the last possible date he may have suffered illegal age discrimination.[13] Plaintiff did not file his Age Discrimination Charge until May 17, 1994, almost two years later. Defendants contend that for this additional reason, Plaintiff's age discrimination claims are time-barred.

Plaintiff responds to this argument with his contention that the usual limitations period applicable to ADEA cases should be tolled because he "was rendered psychologically disabled for a significant period of time after the termination of his employment with TCB from taking action in connection with that employment, including filing a charge with the EEOC."[14] Thus, Plaintiff contends that he was unable to file his Age Discrimination Charge any earlier than he did, and that the limitations period for his Age Discrimination Charge should not have begun to run until the period of his alleged disability ended.

The Fifth Circuit has declared that equitable tolling may apply to the period for filing an EEOC charge in three situations: (1) during the pendency of an action before a state court that has jurisdiction over the subject matter of the suit, but that is the wrong forum under state law; (2) until the claimant knows or should know the facts giving rise to the discrimination claim; and (3) when the EEOC misleads the claimant regarding the nature of his rights under the applicable anti-discrimination statute. *Hood v. Sears Roebuck and Co.,* 168 F.3d 231, 232 (5th Cir.1999); *Blumberg v. HCA Management Co., Inc.,* 848 F.2d 642, 644 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *Steward v. Holiday Inn, Inc.,* 609 F.Supp. 1468, 1469 (E.D.La.1985). The claimant bears the burden of justifying equitable tolling. *Hood,* 168 F.3d at 232; *Blumberg,* 848 F.2d at 644. Although these equitable exceptions have been narrowly applied by the federal court, each case must be analyzed on its own facts. *David v. Trugreen Limited Partnership,* 1999 WL 288686 (N.D.Tex.1999), *citing Wilson v. West,* 962 F.Supp. 939, 946–47 (S.D.Miss.1997).

In *Hood,* the Plaintiff alleged that she was unable to timely pursue her legal rights under Title VII due to mental incapacity. The Fifth Circuit held that tolling was inapplicable since she had managed to retain counsel before the deadline for filing her EEOC charge expired, stating that "this fact indicates that her mental state did not prevent her from pursuing her legal rights under Title VII during the filing period." 168 F.3d at 233. Another court in this district recently took a similar approach to this issue and determined that where the Plaintiff was released back to work, was represented by an attorney, and also was able to apply for a car loan during the asserted period of disability, equitable tolling would not apply. *David,* 1999 WL 288686 at *9. Furthermore, courts have refused to create an additional category of equitable tolling for employees who are "confused or depressed" after their discharge. *See Quina v. Owens Corning Fiberglas Corp.,* 575 F.2d 1115, 1117–19 (5th

fore, the court will grant Defendants' motion for summary judgment on this claim.

**13.** Plaintiff agrees that his age discrimination claim accrued, at the latest, by this date. Defendants' App. at p. 129.

**14.** Plaintiff's Brief at p. 5.

Cir.1978) (employee's "emotional and mental shock" resulting from termination did not justify tolling); *Kerver v. Exxon Production Research Co.,* 1986 WL 8872, *2 (S.D.Tex.1986) (where employee was functioning at a high level other than "understandable depression" resulting from the loss of his job, tolling of EEOC limitations period was not warranted). In *David,* equitable tolling was not permitted even though the employee had been hospitalized for inpatient psychiatric treatment for part of the alleged period of disability. 1999 WL 288686 at *9.

In this case, the record reflects that sometime prior to June 30, 1992 Plaintiff was diagnosed with depression. He had been taking Prozac since 1990. The last report of an examining professional was made by psychologist Richard L. Fulbright ("Fulbright") on February 21 and April 1, 1992. Fulbright concluded that Plaintiff was depressed due to his employment situation but otherwise had normal cognitive functioning. Similarly, Plaintiff's treating physician Dr. Philip Korenman ("Korenman") provided information to TCB regarding Plaintiff's mental condition and treatment. These responses were provided on February 14 and March 24, 1992. Dr. Korenman also found that Plaintiff was not suicidal or a danger to himself or others, had no personality disorder, and had no medical limitations which would prevent him from working, receiving training, and making decisions about his career. From June 30, 1992 through January 1994, the claimed period of his dis-

ability, Plaintiff did not visit any counselor, doctor, or other health care provider regarding any mental, emotional or psychological problem; therefore, the only medical evidence in the record dates back to 1992, before Plaintiff left his employment at TCB. Plaintiff states in his response that "[a]fter June 30, 1992, Hartnett's psychological and physical condition declined to the point that he could not conduct himself in any reasonable manner or focus any attention on his employment with TCB for any purpose." [15] Otherwise, he has no other evidence of his psychological condition between June 1992 and January 1994. The evidence reflects that during this time period Plaintiff was able to interact with people and participated in many activities, although he did not enjoy some of these activities as much as he had in the past.[16] Even assuming that his depression continued after his retirement from TCB, the summary judgment evidence, when considered in the light most favorable to Plaintiff, does not raise a fact issue whether he suffered from a mental or psychological disability that would support equitable tolling of the statute of limitations here.

Plaintiff also argues that in addition to equitable tolling, the doctrine of equitable estoppel should apply to this case because Defendants did not always promptly respond to his inquiries regarding his former employment, in an alleged effort by Defendants to induce him to refrain from pursuing legal action regarding his employment. Plaintiff started making these inquiries in January 1994, more than 300 days after he left his employment on June 30, 1992.

---

**15.** Plaintiff's Response at p. 22. In support of this proposition, Plaintiff cites to p. 27 of his deposition. Therein Plaintiff states that he had been having problems with depression and was using Prozac (or other similar prescription drugs) to assist him in coping with this problem. This evidence does not adequately support Plaintiff's conclusory assertion that he was unable to conduct himself in a reasonable manner, including focusing his attention on his employment with TCB.

**16.** For example, Plaintiff drove a car, drove a boat, visited with friends and family, cared for his infant grandson alone, filed tax returns,

filed insurance forms, went on overnight fishing trips, went out to dinner and the movies, read and understood the daily newspaper, cooked, mowed the lawn, did household chores, painted the porch, cleaned his car, cleaned the pool, grocery shopped, shopped at the mall. drove to Mexia, Texas to visit his mother, ran errands and did odd jobs for his mother, visited his father-in-law in Mexia, went fishing with his father-in-law, dressed himself, made decisions for himself, and could be left alone without endangering himself. Defendants' App. at pp. 77–81.

Therefore, even assuming that Defendants took steps to discourage Plaintiff from pursuing any issues related to his former employment, the statute of limitations on his age discrimination claims expired more than six months before Defendants took any of the actions Plaintiff alleges were calculated to do so. Equitable estoppel will not preserve Plaintiff's untimely age discrimination claims. There is no genuine issue of material fact present whether Plaintiff filed his Age Discrimination Charge within the time period required by the ADEA; thus, Defendants are entitled, to summary judgment on Plaintiff's age discrimination claims.

### C. *Plaintiff's Release of His Age Discrimination Claims*

When Plaintiff retired from TCB pursuant to the early retirement package offered in April 1992, he signed a release waiving all claims against TCB for conduct related to his employment or separation therefrom, including ADEA claims. Plaintiff argues that this release is invalid because TCB did not provide him with the information required by 29 U.S.C. § 626(f)(1)(H) regarding which classes or groups of employees to whom the early retirement plan was being offered, as well as the job titles and ages of all individuals eligible and ineligible for the program. Plaintiff admits that TCB offered to provide him with this information and does not claim that he asked for the information and was denied it. The release Plaintiff signed acknowledges the availability of this information. The court finds that the release signed by Plaintiff complies with this requirement of the ADEA.[17]

Plaintiff further argues that the release is invalid due to his alleged mental disability, meaning that at the time he signed the release, it was not knowing and voluntary as required by 29 U.S.C. § 626(f)(1). The court has already determined that Plaintiff was not suffering from a mental disability as of June 1992, the date he signed the release. Plaintiff cannot successfully revive this argument here in order to invalidate the release. As a matter of law, the release is an additional factor that bars Plaintiff from bringing his age discrimination claims. Defendants are entitled to summary judgment on these claims.

### IV. *Conclusion*

For the foregoing reasons, Plaintiff's claims against Defendants should be dismissed in their entirety because Plaintiff did not comply with the applicable statute of limitations for filing his Age Discrimination and Retaliation Charges, and also did not meet the statute of limitations for filing suit on his age discrimination claims. Furthermore, Plaintiff's age discrimination claims are barred by the release he signed upon accepting a voluntary early retirement package from TCB. Defendants have advanced additional arguments in support of their summary judgment motion; however, because the above issues are dispositive of this case, it is not necessary to reach those arguments. Accordingly, Defendants' Motion for Summary Judgment is **granted,** and all claims asserted by Plaintiff are dismissed with prejudice. Defendants' Motion to Strike Plaintiff's Experts, filed August 21, 1998, Defendants' Supplemental Motion for Summary Judgment on Absence of Statutory Damages to Support Retaliation Claim, filed June 14, 1999, and Defendants' Motion in Limine, filed July 22, 1999 are **denied as moot.** Judgment will be entered by separate document.

**SO ORDERED.**

---

**17.** Plaintiff contends that *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), requires employers to actually provide the information required by section 626(f)(1)(H) rather than make it available to employees, and therefore the release is deficient for this reason. *Oubre* does not address what constitutes a deficiency under section 626(f)(1)(H); rather, it holds that where a deficiency under section 626(f) is found, it will invalidate a release under the ADEA.